John H. MAXWELL and Vera R. Maxwell, Appellants,

v.

UNITED STATES of America,
Appellee.

No. 21008.

United States Court of Appeals
Fifth Circuit.

July 9, 1964.

R. B. Cannon, Fort Worth, Tex., Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel, for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Dept. of Justice, Washington, D. C., H. Barefoot Sanders, U. S. Atty., Dallas, Tex., T. Gary Cole, Jr., Asst. U. S. Atty., Ft. Worth, Tex.,

Fred R. Becker, Harry Baum, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before RIVES, BELL and WRIGHT,* Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

This appeal presents the contention that the District Court erred in failing to apply § 1341 of the Internal Revenue Code of 1954 in a refund suit brought by taxpayers. The taxpayers, who are husband and wife, filed joint tax returns. Mrs. Maxwell had an interest under the Texas law in the community properties involved coextensive with that of her husband. However, Mr. Maxwell was the moving party in the matters under discussion.

The District Court found that Mr. Maxwell received $205,687.65 from the Maxwell Steel Company during the years 1950 to 1954 under an alleged claim of right. During 1953 he loaned the Steel Company $240,000, receiving a note in exchange therefor. Interest was paid on the note as it became due, and was included in taxable income in the years received. The Steel Company made demand in 1959 on Mr. Maxwell for restoration of the sums received by him during the years 1950 to 1954. The demand was made at the instance of the Fort Worth National Bank which held secured obligations of the Steel Company totaling several hundred thousand dollars. The Company subsequently accepted the cancellation of the balance due on this note in the amount of $197,666.83 in satisfaction of its claim for restitution or restoration.

Except for qualifying shares, Mr. Maxwell owned all of the capital stock of Maxwell Steel Company, the business of which had formerly been operated by him as a sole proprietorship. The sums received by him during the years 1950–1954 under the claim of right were from miscellaneous sources in payment for scrap iron sold, and insurance premium refund, rebates, and railroad freight and damage claims. The property sold or for which payments were made was in each instance that of the corporation, and this activity was apparently the result of a disregard of the corporate entity by Mr. Maxwell.

The demand for restoration was made on Mr. Maxwell on January 13, 1959 after it had become known to the bank that the government was asserting a large tax claim against Mr. and Mrs. Maxwell,. Maxwell Steel Company and another corporation owned by Mr. Maxwell, John H. Maxwell Company. He cancelled the balance due him by Maxwell Steel on the note in question on January 15, 1959 in an effort to effect the restoration. The assets of the Steel Company were acquired on January 21, 1959 by Creamer Industries, Inc., a newly chartered Texas corporation, ninety eight percent of the capital stock of which was owned by R. W. Creamer, former executive vice president and general manager of Maxwell Steel. That corporation assumed the secured indebtedness of Maxwell Steel, and paid the sum of $183,000 in cash which. was used to pay all of its other creditors.

On March 24, 1959 the Commissioner of Internal Revenue caused jeopardy assessments totaling $168,196.40 together with penalties to be made against Mr. and Mrs. Maxwell for the fiscal year ended August 31, 1954, inclusive. In support of the notice of deficiency which followed, the Commissioner included in the gross income of taxpayers for the years involved, among other items, the amounts received by Mr. Maxwell under the so-called claim of right, above described, and which amounts were realized from the property of Maxwell Steel Company.[1]

---

* Of the D.C.Circuit, sitting by designation.

1. Those amounts, totaled by the years in question, were as follows:

Fiscal year ending August 31, 1950—$23,203.22
" 1951— 47,064.24
" 1952— 46,563.74
" 1953— 50,352.33
" 1954— 38,504.12

The taxpayers contend that they are entitled to relief under § 1341, supra.[2]

The District Court denied the claim for refund and dismissed the suit with prejudice on the basis that the taxpayers had neither reported the income received from Maxwell Steel under the claim of right, nor paid the tax due thereon. The District Court was also of the view that at the time of cancellation the note was worthless, and without tax significance in that it did not constitute restoration as contemplated by the statute. The assignments of error put these views of the District Court in issue. We are also asked to determine that taxpayers sustained capital losses within the meaning of 26 U.S.C.A. § 165(g) in the fiscal year ending August 31, 1959 when the capital stock of Maxwell Steel Company became worthless. They urge that the evidence showed without dispute that the stock had a basis in their hands for gain or loss at the time it became worthless of $126,643.83. The government contends that this point was not urged in the District Court, and thus is not properly before this court.

 An understanding of § 1341 begins with the rule that ordinarily amounts received under a claim of right must be included in taxable income in the taxable year of receipt, although repaid in a later year. Section 1341 was designed to alleviate the harsh effect of this rule in special situations where the conditions stated in the section are met. If the amount received in a prior year was included in gross income for that year, and the taxpayer repays the amount in a later year, then the tax for which he is liable in the year of repayment is the lesser of either the tax due for the year of repayment computed by deducting the repayment, or the tax for the year without the deduction, minus that decrease in tax for the prior taxable year which would result solely from the exclusion of such amount from the gross income of the prior year. See Mertens, Law of Federal Income Taxation, Code Commentary, § 1341:1.

The government contends, and the District Court agreed, that this section inures to the benefit of a taxpayer only if the amount received under the claim of right has been included in gross income for the prior year, the tax thereon paid, and restoration made. The facts here are that the amounts received under the claim of right were not included in gross income by taxpayers, but were the subject of the jeopardy assessments.

2. 26 U.S.C.A. § 1341 in pertinent part:
"*Computation of tax where taxpayer restores substantial amount held under claim of right.*
"(a) General Rule.—If—
"(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;
"(2) a deduction is allowable for the taxable year because it was established after the close of such prior year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and
"(3) The amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following:
"(4) the tax for the taxable year computed with such deduction; or
"(5) an amount equal to—

"(A) the tax for the taxable year computed without such deduction, minus
"(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).
\* \* \* \* \* \* \*
"(b) Special rules.—
"(1) If the decrease in tax ascertained under subsection (a) (5) (B) exceeds the tax imposed by this chapter for the taxable year (computed without the deduction) such excess shall be considered to be a payment of tax on the last day prescribed by law for the payment of tax for the taxable year, and shall be refunded or credited in the same manner as if it were an overpayment for such taxable year.
\* \* \* \* \* \* \*

Also, the taxes claimed on these amounts had not been paid. They are the current subject of litigation in the Tax Court. In light of our holding with respect to the question of the worthlessness of the note, and hence of the attempted restoration, we pretermit the questions of whether or not inclusion in income and payment of taxes thereon, or either, are prerequisites to the relief under § 1341.

Taxpayers cannot prevail if the finding that the restoration was ineffective,[3] and without tax significance because of the worthlessness of the note is not clearly erroneous. They rely on the testimony of Mr. Creamer that he would not have paid the $183,000 cash consideration for the assets of Maxwell Steel without the cancellation of the note. This is said to prove that the note was worth not less than that amount. There was also testimony that a cancellation would facilitate a sale of the assets.

On the other hand, ample evidence was adduced on the trial to demonstrate that the note was worthless, and thus ineffective as restoration. Mr. Creamer testified that the net worth of Maxwell Steel was zero after a large tax claim against it, taxpayers, and another corporation wholly owned by them, became known in January 1959. This conclusion resulted at least in part from the fact that outstanding loans were called by the bank, and from the fact that lines of credit were necessary to the success of the corporate endeavor. Mr. Maxwell testified that the stock of Maxwell Steel became worthless in 1959 upon the sale of the assets to Creamer. This statement is supported by the term of purchase which included only an assumption of the secured debts, and a cash payment sufficient to pay outstanding unsecured debts. He testified emphatically that the company could not have paid the note after the tax claim became known in January 1959. According to

an appraisal as of January 21, 1959, the secured debts due by Maxwell Steel exceeded the value of its assets, and Mr. Creamer testified that he realized, subsequent to the purchase, that his corporation pay about $300,000 more than the value of the assets of Maxwell Steel.

■■ In sum, there is an ample evidentiary basis in the record to support the finding complained of that the note was practically worthless. Thus the decision of the District Court, adverse to taxpayers, based on the failure to establish a prerequisite to relief under § 1341, namely restoration of sums taken under a claim of right, was correct.

■■ The District Court did not pass on the question, raised by way of defense to the counterclaim of the government, of a loss sustained because of the capital stock of Maxwell Steel having become worthless during the fiscal year ending August 31, 1959. It is true that an appellant may not raise issues on appeal which were not raised below. Helvering v. Cement Investors, Inc., 1942, 316 U.S. 527, 62 S.Ct. 1125, 86 L.Ed. 1649. But, the rule is different where the question is fairly put in issue by the pleadings and proof, and is not abandoned. Cf. Chase Manhattan Bank v. Commissioner, 5 Cir., 1958, 259 F.2d 231. There may have been soft-pedalling of the issue in the court below, but it fell short of abandonment. The contention that the stock became worthless during 1959 somewhat militates against the contention that the note of the corporation was of sufficient value to constitute restoration of the total of $205,687.65 theretofore taken by Mr. Maxwell from the corporation. This state of affairs doubtless gave rise to a modicum of caution on the part of counsel for taxpayers in urging the stock loss contention. Nevertheless, the issue was in the case and it should and must have the due consideration of the District Court on remand.

---

3. Findings of Fact, par. 10:
 "The above note of the Maxwell Steel Company to John H. Maxwell, which had an unpaid balance of $197,666.83 when cancelled on or about January 15, 1959, had no money value equal to said debt, nor any substantial monetary worth at all and, in reality, was practically worthless."

To that end the judgment of dismissal must be vacated.

Affirmed in part, vacated and remanded for further proceedings not inconsistent herewith.