**Hobert E. MURPHREE and Maureen Murphree, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 88–1321.

United States Court of Appeals, Fifth Circuit.

March 15, 1989.

Howard A. Weinberger, Dallas, Tex., for plaintiffs-appellants.

Kenneth W. Rosenberg, Gary R. Allen, Chief Appellate Section Tax Div., Dept. of Justice, Wm. S. Rose, Asst. Atty. Gen., David I. Pincus, Washington, D.C., for U.S.

Before REAVLEY, WILLIAMS and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

At issue is whether the Murphrees are entitled to a loss deduction from their income taxes upon the return of misappropriated funds to their closely held company. The district court ruled that the loss deduc-

tion was not available because the Murphrees were under no legal obligation to return the misappropriated funds. Concluding that the Murphrees had an obligation to return the funds to the corporation under state law, and that their repayment was therefore involuntary, we reverse the judgment of the district court.

## BACKGROUND

Hobert Murphree was the president and chairman of the board of Hobert Pools, Inc.[1] Together with his wife, Maureen, he owned 94.7% of that company. The remainder was owned by Tom Dean as trustee for the Murphree's five children, several of whom were minors at the time of the misappropriation. Tom Dean was also the Murphree's attorney who provided legal advice to them in the situation that gave rise to this case.

From 1978 through early 1981, Hobert Murphree appropriated checks totalling $131,356.80 and made out to the corporation for his own use. He did so by telling the company bookkeepers that he had settled customer disputes by accepting less than was due, while he pocketed the actual amount paid. An IRS audit disclosed the misappropriation, and the Murphrees paid deficiencies in personal income tax, penalties and interest totalling $119,408.19.

Upon advice from Dean, the Murphrees returned $127,616.00 to the corporation in 1981. The corporation recognized the money as income and paid $50,196.00 in income tax. The Murphrees now claim a $67,-291.00 loss deduction on their personal in-

come tax for the year in which repayment was made. After their refund claim was denied by the IRS, the Murphrees filed this action in 1984 seeking a refund plus interest, attorneys' fees and costs. Initially, the government sought a jury trial, but it later moved to strike the jury demand. The district court granted the motion over the objection of the Murphrees. The case was tried on stipulations of fact and exhibits.

The district court determined that the Murphrees did not have a preexisting legal obligation under Texas law to repay the amount that Hobert Murphree misappropriated to himself. The district court first concluded that the government did not judicially admit that a legal obligation existed under Texas law. Then, the district court determined that the legal obligation did not exist and that the repayment was voluntary, rendering the loss deduction unavailable. The Murphrees challenge this latter ruling,[2] and they contend that the court's reasoning depends on implicit findings of fact requiring a jury trial. We resolve this case on the sole issue of the Murphrees' right to the loss deduction.

## DISCUSSION

■ The Murphrees seek a deduction under 26 U.S.C. § 165[3] for the year of repayment.[4] They rely on *James v. United States*, 366 U.S. 213, 220, 81 S.Ct. 1052, 1056, 6 L.Ed.2d 246 (1960); *Healy v. Commissioner*, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007 (1953); *McKinney v. United States*, 574 F.2d 1240, 1241 (5th Cir.1978),

---

1. The facts were stipulated by the parties.

2. This court need not review the district court's determination that the government did not judicially admit the legal obligation. In the government's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, the government stated that:

   Defendant agrees with plaintiffs' reading of Texas law that the property acquired by Mr. Murphree in violation of his fiduciary duty was charged with a trust for the corporation's benefit.

   The district court held that the admission was superceded by later briefs, and thus has only evidentiary value. The court held that an amended pleading supercedes an earlier plead-

ing, and that a subsequent brief supercedes an earlier brief (but that a brief cannot supercede a pleading). Alternatively, the district court held that the admission did not preclude the argument that the Murphrees were still not obliged to repay the money. The Murphrees do not contest this holding; they merely point to the passage as evidence of the truth of the admission.

3. Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise."

4. The Murphrees do not seek a deduction under 26 U.S.C. § 1341, the "claim of right" provision, for taxes paid in prior years.

cert. denied, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); and *Maxwell v. United States*, 334 F.2d 181, 183 (5th Cir.1964). The government concedes that the deduction would be proper if the repayment was involuntary. The Murphrees concede that the deduction would only be proper if the repayment was involuntary. Thus, the case turns on whether or not the repayment was voluntary.

The Murphrees assert that they had a legal obligation to repay the amount misappropriated since Texas law impressed a constructive trust upon them for the benefit of the corporation at the time of the misappropriation, and because the corporation had a legal right to recover its property. Additionally, their lawyer, Tom Dean, advised them to return the money to the corporation. As a stockholder-trustee, Tom Dean had a duty to enforce the claims against the Murphrees or he would have been personally liable for the losses to the beneficiaries of the Murphree Trust. For these reasons, the Murphrees claim, they were legally obliged to repay the money whether or not a suit was filed exposing them to additional cost, punitive damages and attorneys' fees.

The Murphrees are correct about their legal obligation. In *Meyers v. Moody*, 693 F.2d 1196, 1209 (5th Cir.1982) (citing Texas court cases), this court recognized the fiduciary duties of a corporate director under Texas law:

> Texas law imposes on corporate officers and directors a duty to exercise due care in the management of the corporation's affairs. If they breach that duty, they are liable to the corporation for any loss it may suffer as a result of their neglect.

Since theft of corporate funds is a breach of due care, Hobert Murphree would be personally liable for the amount of repayment regardless of any other provision of Texas law. Moreover, special scrutiny is applied to corporate officers' self dealing transactions. *International Bankers Life Insurance Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex.1963).

The district court held that no constructive trust was, or could be, created since all the corporate directors knew that the money was being diverted. There is no support for the proposition that directors' knowledge changes the nature of fraud on the corporation. There would still be fraud on a corporation if all the officers conspired to rob it, because the corporation exists independently of its officers. Nor does it matter that the corporate directors are the majority stockholders. The constructive trust is created to protect the interests of the minority stockholders and creditors as well.

The district court also erred in its determination that Texas law does not impose a constructive trust until a civil suit is filed. Texas law does impose a constructive trust in favor of the corporation from the time of the misappropriation. *Searle–Taylor Machinery Co., Inc. v. Brown Oil Tools, Inc.*, 512 S.W.2d 335, 338 (Tex.Civ.App.—Houston, 1st Dist.1974, writ ref'd n.r.e.). Even if this were not true, Hobert Murphree must have still been under a legal obligation to repay the money or no civil suit could be brought. Civil suits do not create legal obligations; they enforce them.

The government cites Texas cases which state that a constructive trust is an equitable remedy to prevent unjust enrichment, and that no such trust needs to be created on the facts of this case.[5] These statements regarding one purpose of Texas trust laws do not preclude us from finding that the Murphrees had a legally enforceable obligation to repay the amount of their misappropriation. See *Estate of Bailey v. Commissioner*, 741 F.2d 801, 804–05 (5th Cir.1984) (a fiduciary's duty under Texas law toward a beneficiary does not depend on the beneficiary's demand for repayments).

---

5. Although the district court agreed with this argument, its language in another part of the opinion impliedly contradicts its holding:

> neither HPI [Hobert Pools, Inc.] nor HMT [Hobert Murphree Trust] would take action against [Hobert] to **enforce** a constructive trust. (emphasis added)

The district court did not state that neither HPI nor HMT would take action against Hobert to **create** a constructive trust.

The government defends the court's result on two other grounds. First, it argues that where the corporation is under the control of the taxpayer, any repayment is voluntary because the taxpayer would not allow the corporation to bring suit against him. We disagree. Minority stockholders or creditors may still bring suit against the taxpayer. Moreover, in *Maxwell*, the taxpayer owned 100% of the corporation. This court did not allow a deduction for prior tax years under § 1341, but we recognized that a deduction would be proper for repayment in the year just ended. 334 F.2d at 183. See also *Van Cleave v. United States*, 718 F.2d 193, 195 (6th Cir.1983).

The government also argues that distribution of assets from the corporation, even before they reach the corporate treasury, are "commonly treated" as "constructive" dividends, whose return is not deductible. This argument is flawed for two reasons. First, this case is not one where the corporation consented to the transaction, such as the case of excessive officer compensation. That the corporate officers knew of the misappropriation, as we earlier observed, does not mean that the corporation consented to the transaction. The parties stipulated that the corporation did not authorize the misappropriation. Second, it is a mistake to suggest that the broad federal definition of a "constructive" dividend governs the Murphrees' obligation under state law. Texas law holds that the misappropriation was an unauthorized distribution of corporate assets.

We conclude that the Murphrees had a legal obligation to repay the amount misappropriated and are entitled to a loss deduction under § 165. Not only is the deduction proper, but in this case, it makes sense. A contrary result would encourage lawyers like Dean to advise corporate officers to keep the proceeds of questionable deals until and unless suit is brought. In the end, this might lead to unnecessary or sham litigation, even as it would delay the corporation's receipt of its misappropriated funds.

Our conclusion obviates the need to discuss the Murphrees' demand for a jury trial.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for consideration of the Murphrees' right to attorneys' fees.