ESTATE OF OTIS E. BYRD, DECEASED, JIMMIE LOU BYRD, ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3848-64. Filed April 6, 1966.

*W. G. Hardwick*, for the petitioner.
*Robert W. Goodman*, for the respondent.

OPINION

ATKINS, *Judge:* The respondent determined a deficiency in income tax of $64,856.64 against the petitioner-estate for its taxable year 1959. The only issue presented is whether distributions received by the estate upon the redemption of stock of three corporations should be treated, under section 303 of the Internal Revenue Code of 1954, as distributions in exchange for the stock so redeemed, as contended by the petitioner, or whether the amounts received upon the redemptions constituted dividends, as determined by the respondent.

All of the facts have been stipulated and are incorporated herein by this reference.

The petitioner filed its Federal income tax return for its taxable year 1959 with the district director of internal revenue at Birmingham, Ala.

The decedent died on August 21, 1957. His gross estate was valued for estate tax purposes at $728,624.85 and the taxable estate was $314,512.19.

On the date of the decedent's death there were issued and outstanding 50,000 shares of common stock of the Peoples Savings Life Insurance Co. (hereinafter referred to as Peoples) having a total value of $175,000. At the time of his death the decedent owned 44,450 shares

of the outstanding common stock of Peoples which had a value of, and was included in his gross estate at, $155,575. This represented 88.9 percent of the total value of the outstanding capital stock of such company.

On the date of the decedent's death there were issued and outstanding 700 shares of common stock of the Hub City Finance Co., Inc. (hereinafter referred to as Hub City), having a total value of $140,000. At the time of his death the decedent owned 227 shares of such stock which represented 32.4 percent of the total value of the outstanding shares of such company. The total value of the decedent's 227 shares for Federal estate tax purposes was $45,400.

On the date of the decedent's death Peoples owned 471 shares of the outstanding common stock of Hub City. The value of the 88.9 percent of the 471 shares of Hub City owned by Peoples valued in the decedent's estate was $83,743.80.

The total value of the stock of Hub City owned by the decedent individually at the date of his death was $45,400 and the 88.9 percent of the 471 shares of stock of Hub City owned by Peoples was valued at $83,743.80 or a total valuation in the estate of $129,143.80, which constituted 92.24 percent of the total value of all the outstanding capital stock of Hub City at date of decedent's death.

On the date of the decedent's death there were issued and outstanding 290 shares of class A nonvoting common stock and 10 shares of class B voting stock of the Alabama Banking Co., Inc. (hereinafter referred to as Alabama Banking). The total value of both classes of stock was $150,000. At the time of his death, the decedent owned 190 shares of the outstanding class A nonvoting common stock and 8 shares of the outstanding class B voting stock, which had a total value for Federal estate tax purposes of $99,000, which represented 66 percent of the total value of the outstanding capital stock of such company.

On the date of the decedent's death Peoples owned 99 shares of the outstanding class A common stock of Alabama Banking which had a value at the date of the decedent's death of $49,500. The value of the 88.9 percent of the 99 shares of Alabama Banking owned by Peoples valued in the decedent's estate was $44,005.50.

The total value of the stock of Alabama Banking owned individually by the decedent at the date of his death was $99,000 and the 88.9 percent of the stock of Alabama Banking owned by Peoples was valued at $44,005.50 or a total valuation in the estate of $143,005.50, which constituted 95.33 percent of the total value of all the outstanding capital stock of Alabama Banking at the date of decedent's death.

On the date of the decedent's death there were issued and outstanding 1,000 shares of class A nonvoting common stock and 275 shares

of class B voting common stock of the Rock Finance Co., Inc. (hereinafter referred to as Rock Finance), having a total value of $56,250. At the time of his death the decedent owned all of the 1,000 shares of the outstanding class A nonvoting common stock of Rock Finance, which had a value for Federal estate tax purposes of $15,000, which represented 26.67 percent of the total value of the outstanding capital stock of such company.

On the date of the decedent's death Peoples owned 221 shares of the outstanding class B voting stock of Rock Finance. The value of the 88.9 percent of the 221 shares of class B voting stock of Rock Finance owned by Peoples valued in the decedent's estate was $29,470.35.

The total value of the stock of Rock Finance owned by the decedent individually at the date of his death was $15,000 and the 88.9 percent of the stock of Rock Finance owned by Peoples was valued at $29,470.35 or a total valuation in the estate of $44,470.35, which constituted 79.05 percent of the total value of all the outstanding capital stock of Rock Finance at the date of the decedent's death.

On November 17, 1959, Alabama Banking redeemed 100 shares of class A nonvoting common stock from the petitioner for $50,000. On November 21, 1959, Rock Finance redeemed 900 shares of class A nonvoting common stock from petitioner for $13,500. On the same day Hub City redeemed 127 shares of its common stock from the petitioner for $25,400. The price at which Alabama Banking, Rock Finance, and Hub City redeemed such shares was the same as the amount at which they were valued in the Federal estate tax return filed by the petitioner.

The petitioner has paid the following estate taxes and administration expenses:

| | |
|---|---:|
| Federal estate tax | $86, 343. 90 |
| Alabama estate tax | 5, 984. 39 |
| Funeral and administration expense | 8, 615. 80 |
| Total | 100, 944. 09 |

In its income tax return for the taxable year 1959 the petitioner did not report any income from the above stock redemptions, treating the amounts received as distributions in exchange for the stock under the provisions of section 303 of the Internal Revenue Code of 1954.

In the notice of deficiency the respondent determined that the redemptions of stock did not meet the requirements of section 302 and/or 303 of the Internal Revenue Code of 1954, and that the distributions totaling $88,900 constituted dividend income which is to be included in gross income under section 301 of the Code.

There are set forth in the margin pertinent provisions of section

303 of the Code.[1]  Section 303 (a) sets forth the general rule that a distribution in redemption of all or part of the stock of a corporation which is included in the decedent's gross estate shall be treated as a distribution in full payment in exchange for the stock redeemed to the extent that the amount of the distribution does not exceed the sum of all taxes imposed because of the decedent's death and the funeral and administration expenses deductible by the estate in computing the value of the taxable estate.  However, section 303 (b) (2) (A) limits the application of the general rule to the situation where the value for estate tax purposes of all of the stock of the redeeming corporation included in determining the value of the decedent's gross estate is either more than 35 percent of the value of the gross estate or more than 50 percent of the taxable estate.  Section 303 (b) (2) (B) provides that, for purposes of the application of the 35-percent and 50-percent requirements, stock of two or more corporations, with respect to each of which there is included in determining the value of the decedent's gross estate more than 75 percent in value of the outstanding stock, shall be treated as the stock of a single corporation.

The total amount of the distributions received by the petitioner did not exceed the sum of the tax imposed because of the decedent's death and the amount of the funeral and administration expenses allow-

---

[1] Section 303 of the Code provides in part as follows :

(a) IN GENERAL.—A distribution of property to a shareholder by a corporation in redemption of part or all of the stock of such corporation which (for Federal estate tax purposes) is included in determining the gross estate of a decedent, to the extent that the amount of such distribution does not exceed the sum of—

(1) the estate, inheritance, legacy, and succession taxes (including any interest collected as a part of such taxes) imposed because of such decedent's death, and

(2) the amount of funeral and administration expenses allowable as deductions to to the estate under section 2053 * * *,

shall be treated as a distribution in full payment in exchange for the stock so redeemed.

(b) LIMITATIONS ON APPLICATION OF SUBSECTION (a).—

(1) PERIOD FOR DISTRIBUTION.—Subsection (a) shall apply only to amounts distributed after the death of the decedent and—

(A) within the period of limitations provided in section 6501 (a) for the assessment of the Federal estate tax (determined without the application of any provision other than section 6501 (a)), or within 90 days after the expiration of such period, or

(B) if a petition for redetermination of a deficiency in such estate tax has been filed with the Tax Court within the time prescribed in section 6213, at any time before the expiration of 60 days after the decision of the Tax Court becomes final.

(2) RELATIONSHIP OF STOCK TO DECEDENT'S ESTATE.—

(A) IN GENERAL.—Subsection (a) shall apply to a distribution by a corporation only if the value (for Federal estate tax purposes) of all of the stock of such corporation which is included in determining the value of the decedent's gross estate is either—

(i) more than 35 percent of the value of the gross estate of such decedent, or

(ii) more than 50 percent of the taxable estate of such decedent.

(B) SPECIAL RULE FOR STOCK OF TWO OR MORE CORPORATIONS.—For purposes of the 35 percent and 50 percent requirements of subparagraph (A), stock of two or more corporations, with respect to each of which there is included in determining the value of the decedent's gross estate more than 75 percent in value of the outstanding stock, shall be treated as the stock of a single corporation.  For the purpose of the 75 percent requirement of the preceding sentence, stock which, at the decedent's death, represents the surviving spouse's interest in property held by the decedent and the surviving spouse as community property shall be treated as having been included in determining the value of the decedent's gross estate.

able as deductions in computing the taxable estate. Nor is there any question that the distributions were made within the time limitations provided by the statute. The only controversy is whether the percentage requirements of section 303 (b) (2) have been met.

The value of the gross estate was $728,624.85 and the taxable estate was $314,512.19. The value ($45,400) of the stock of Hub City which the decedent owned directly and which was included in determining the value of his gross estate obviously does not amount to more than 35 percent of the value of the gross estate or to more than 50 percent of the taxable estate. The same is true with respect to the value ($99,000) of the stock of Alabama Banking and the value ($15,000) of the stock of Rock Finance which the decedent owned directly and which was included in determining the value of the gross estate. Furthermore, the decedent did not own directly as much as 75 percent of the outstanding stock of any one of such corporations (owning directly only 32.43 percent of Hub City, 66 percent of Alabama Banking, and 26.67 percent of Rock Finance), and therefore the amount included in the gross estate representing such direct ownership did not amount to as much as 75 percent of the value of the outstanding stock of any of those corporations. Thus, if we consider only the value of the stock of those corporations included in the gross estate on account of the stock which the decedent directly owned, it is readily apparent that none of such stock may, under section 303 (b) (2) (B), be treated, along with stock of any other corporation, as stock of a single corporation for the purpose of determining whether either the 35-percent or the 50-percent requirement has been met.

The petitioner contends that in determining whether more than 75 percent in value of the outstanding stock of any of the redeeming corporations was included in determining the value of the gross estate there should be taken into consideration the value of 88.9 percent of the stock of those corporations which was owned by Peoples, since such value was included in the gross estate by virtue of there having been included in the gross estate the value of the decedent's 88.9 percent of the stock of Peoples. It argues that the statute is concerned only with whether the value of stock of a corporation included in determining the value of the gross estate meets the percentage requirement, and that such value should be construed as encompassing "direct valuation and indirect valuation and all valuations of any capital stock of any corporation which was included in any manner in the estate of the decedent." It points out that the stipulation of facts, which has been set forth hereinabove almost verbatim, states that the value of the stock of the redeeming corporations owned by the decedent individually at the date of his death as well as the value of 88.9 percent of the stock of such corporations owned by Peoples, or a total of 92.24 percent of the value of the outstanding stock of Hub City, 95.33

percent of the value of the outstanding stock of Alabama Banking, and 79.05 percent of the value of the outstanding stock of Rock Finance, was included in the decedent's estate. It therefore contends that the provisions of section 303(b) (2) (B) have been met.

If the petitioner is correct in its interpretation of the statute then it must be considered that there was included in determining the value of the decedent's gross estate more than 75 percent in value of the outstanding stock of each of Hub City, Alabama Banking, and Rock Finance; that therefore the stock of those three corporations is to be treated as the stock of a single corporation; and that the value of the stock of such single corporation included in determining the value of the decedent's gross estate was $316,619.65 (composed of $129,143.80 for Hub City, $143,005.50 for Alabama Banking, and $44,470.35 for Rock Finance), which is more than 35 percent of the value of the gross estate of the decedent and more than 50 percent of the taxable estate of the decedent.

The respondent, on the other hand, contends that only the value of the stock owned directly by the decedent at date of death can be utilized in determining whether the 75-percent requirement of section 303(b) (2) (B) has been met. It is his position that Congress did not intend for the phrase "included in determining the value of the decedent's gross estate" to encompass stock held as an underlying asset by a corporation the stock of which has been directly valued in the gross estate. He points out that in those sections of the Code where indirect ownership as well as direct ownership is intended to apply this has been specifically stated in the Code section or there has been a cross-reference to section 318, which deals with constructive ownership of stock, whereas section 303 contains no provision allowing the combining of stocks directly owned and those indirectly owned in order to meet the 75-percent requirement of section 303(b) (2) (B).

We agree with the respondent that for the purpose of determining whether the 75-percent requirement set forth in section 303(b) (2) (B), and hence the 25-percent or 50-percent requirement of section 303(b) (2) (A), has been met there is to be taken into consideration only the value of the stock of the redeeming corporation which has been directly included in determining the value of the decedent's gross estate—that is, the value of the stock of such corporations which the decedent owned directly at the date of his death and which was included in his gross estate. It is clear that section 303 must be interpreted in the light of the other sections of the Code dealing with the estate tax, since it specifically refers to the value, for Federal estate tax purposes, of stock included in determining the value of the decedent's gross estate.

Section 2031 of the Code provides that "The value of the gross estate of the decedent shall be determined by including to the extent

provided for in this part [pt. III, ch. 11], the value at the time of his death of all property * * *." Section 2033 sets forth the basic provision that the "value of the gross estate shall include the value of all property * * * to the extent of the interest therein of the decedent at the time of his death." There are, in addition, other provisions in part III requiring that the value of the gross estate shall include the value of property transferred in contemplation of death (sec. 2035), property the transfer of which is to take effect at death (sec. 2037), etc. Part III does not provide for the inclusion in determining the value of the gross estate of the value of property owned by a corporation of which the decedent is a stockholder. Thus, we think that section 303(b)(2)(B) must be interpreted as having reference to only the stock actually owned by the decedent at the date of his death or otherwise required to be included in his gross estate, and not to stock in which he has only an indirect interest through ownership of stock of another corporation.[2] In the instant case there was not included in determining the value of the decedent's gross estate, within the contemplation of the statute, the stock of the redeeming corporations which was owned by Peoples. It was the value of the decedent's stock of Peoples which was included in the decedent's gross estate.[3]

In view of the foregoing, we hold that the respondent properly determined that the distributions in question are not to be treated as distributions in full payment of the stock redeemed within the contemplation of section 303 of the Code. The respondent also determined that such distributions did not qualify as distributions in part or full payment in exchange for the stock within the contemplation of section 302 of the Code, and that therefore such distributions constituted dividends. These latter determinations of the respondent have not been put in issue.

*Decisions will be entered for the respondent,*

---

[2] In this connection it should be noted that the only exception to this provided in sec. 303(b)(2)(B) is that provided in the last sentence thereof which states that a surviving spouse's interest in stock held by the decedent and the surviving spouse as community property shall be treated as having been included in determining the value of the decedent's gross estate.

[3] The parties have, in effect, stipulated as a fact that in the instant case the circumstances are such that the value of the stock of Peoples is measured by the value of the stock of the redeeming corporations which it owned. However, that fortuitous circumstance is not determinative of the question here presented.