MaddeN, Judge,
delivered the opinion of the court:
The plaintiff has been, since September 1940, president and a director of The Matheson Company, Inc., hereinafter called Matheson. Earlier in 1940 the Interim Corporation, which had been formed by the plaintiff and other persons, bought all the outstanding stock of Matheson. Interim then merged with Matheson and adopted the Matheson name for the corporation which resulted from the merger.
In the formation of the Interim Corporation, 400 shares of preferred stock had been issued for $100 per share, and with each share of preferred was given one share of common stock. After the merger the outstanding stock of the new Matheson was 400 shares of preferred, 400 shares of common in the hands of the holders of the preferred, and 216 shares of common which had been deposited with a trustee, to be delivered to the plaintiff when all the preferred stock had been redeemed, if that should be accomplished by the year 1950. In the meantime the plaintiff was to have the right to vote the 216 shares, and to receive any dividends payable on it. Only the common stock had voting rights.
Matheson conducted its business iii leased property. In 1942 the owner of that property resolved to sell it, and it was necessary for Matheson to make some arrangement for its *259 purchase in order to be able to continue to occupy it. Ferian Realty Corporation, hereinafter called Ferian, was formed to purchase .the property. The plaintiff was the president of Ferian. The cost to Ferian, including the cost of fees, surveys, back taxes and other expenses was $13,566.24. Fer-ian issued 616 shares of common stock and distributed them, share for share, to the common stockholders of Matheson. Ferian leased the property which it had acquired to Mathe-son at an annual rental of $3,600 per year.
In 1944, the plaintiff was negotiating with the Federal Deposit Insurance Corporation for the settlement of a debt owed by the plaintiff and dating back to 1929. By February 10, 1945, the principal and interest of the debt amounted to $37,384.23. The plaintiff had been advised that the FDIC intended to take steps to enforce the payment of the debt and that it knew of some person or persons who would pay $25,000 for the interest which the plaintiff and his wife owned in Matheson. In January 1945, the plaintiff offered the FDIC $25,000 in cash in full settlement of his debt. The FDIC accepted the offer.
For the raising of the $25,000, the only valuable asset which the plaintiff had was his interest in Matheson and Ferian. Through his control of Matheson, a new issue of 616 shares of Class A stock was authorized, having voting rights identical with common shares and callable at $80 per share. The Class A stock was to be offered in exchange for the shares of Ferian, on a share-for-share basis, and when Matheson should have acquired all the stock of Ferian, Fer-ian was to be dissolved, and Matheson would own the property in which it carried on its business.
In 1945, the plaintiff and his wife indorsed the certificates for 323 shares of the Class A stock to Matheson for redemption and were paid $80 a share for it. Again in January 1946 the plaintiff turned in for redemption 63 shares of Class A stock and was paid $80 a share for it. In 1945 other stockholders turned in for redemption 29 shares, and in 1946, three shares. Matheson did not, in those years, issue any formal authorization of or call for redemption. But at the time of the redemption of the stock of the plaintiff and his wife, as noted above, they owned a majority of the *260 voting stock of Matheson. After these redemptions they owned slightly less than a majority of the voting stock.
In his income tax returns for the years 1945 and 1946, the plaintiff treated his profit on the redemption of his Class A stock as long term capital gain and therefore returned only 50 percent of it as taxable income. The tax authorities, however, treated the profit as a dividend, taxable as ordinary income. The plaintiff paid the taxes demanded, and filed timely claims for refund, which claims were disallowed.
Section 115 (g) of the Internal Kevenue Code of 1939, 53 Stat. 48, says:
(g) Redemption of Stock. — If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.
Before the redemptions here involved Matheson had a surplus of some $36,000. There is left for our consideration, therefore, only the question whether the redemption of the plaintiff’s stock was accomplished in such a mariner as to make the payments to him “essentially equivalent to the distribution of a taxable dividend.”
Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939, say, in section 29,115-9.
* * * (b) The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28,1913. On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder:, so that the shareholder .ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend * * *.
*261 • While the regulation just quoted does not literally cover the instant situation, we think the reason inherent in the regulation is applicable. A dividend is a pro rata distribution to stockholders in proportion to their holdings. If they surrender for cancellation a proportionate part of their stock, and receive for the surrender a proportionate payment out of earnings, they have the money, and still have the same proportionate interest in the corporation which they had before the surrender. Their interest in the corporation would have been the same if they had received their payments in the express form of dividends, without the surrender of a part of their stock.
In the instant case, the plaintiff’s surrender for redemption in 1945 of 323 shares of his Class A stock reduced his holdings from 774 shares of voting stock, 63 percent, to 451 shares, 51.83 percent. It also eliminated his right to receive cumulative dividends of $4.80 per share on the 323 shares redeemed, though the other holders of Class A stock continued to receive such dividends. The surrender for redemption by the plaintiff in 1946 of 63 additional shares of Class A stock reduced his holdings of voting stock to less than half, thus depriving him of control of the company.
Although the Treasury regulation quoted above speaks of a redemption of all the stock of a particular shareholder as not being the equivalent of a taxable dividend, we see no reason why the redemption of a part of a shareholder’s stock should have a different effect. It changes, pro tanto, his interest in the corporation in the same way that redemption of all his stock would do.
The instant case seems to us to be controlled by this court’s decision in Trust Company of Georgia v. The United States, 104 C. Cls. 150. Here, as in that case, the payments were not equivalent to, but were essentially different from, dividends.
We may add that we see no evidence that the transaction here under consideration was motivated by a purpose to evade taxes. It was necessary for the plaintiff to raise cash, to take advantage of the chance to settle his debt to the FDIC and prevent it from taking all his interests in Mathe-son and Ferian. He got a better price by selling a part of *262 those interests to Matheson and also kept the stock out of the hands of strangers. These were natural and proper business motives, regardless of their tas consequences.
The plaintiff is entitled to recover, with interest according to law. Entry of judgment is suspended to await the filing by the parties of a stipulation showing the amount due, in accordance with this opinion.
It is so ordered.
Laramgre, Judge,; Whitaker, Judge; Littleton, Judge; and JoNes, Chief Judge, concur.
FINDINGS OE FACT
The court, having considered the evidence, the report of ■ Commissioner William E. Day, and the briefs and arguments of counsel, makes findings of fact as follows:
1. The plaintiff is an American citizen residing at 309 Clinton Place, Hackensack, New Jersey.
2. The plaintiff has, since September 1940, been president and director of The Matheson Company, Inc., a New Jersey corporation located on Paterson Plank Hoad, East Rutherford, New Jersey. Prior to the year 1948, the company was a distributor of chemical gases to laboratories throughout the United States.
3. In the spring of 1940, all of the outstanding stock of The Matheson Company, Inc., consisting of 210 shares of preferred and 1,000 shares of common, was offered for sale by the executor of the estate of Mrs. A. M. Matheson. The plaintiff formed a group to purchase the above-described stock of The Matheson Company. The purchase was accomplished by the formation of a conduit corporation known as the Interim Corporation. Four hundred shares of preferred stock of $100 par value in the Interim Corporation was sold with one share of common stock, no par value, given as a bonus to the purchaser of each share of preferred. The Interim Corporation then purchased The Matheson Company stock for $30,000 cash and a note for $10,000 secured by a stock certificate in the name of the wife of the plaintiff. The Interim Corporation then merged with The Matheson Company, Inc., with a resultant corporation retaining the name, The Matheson Company, Inc.
*263 4. Although, the record is not entirely clear on the point, it appears that 210 shares of the preferred and 1,000 shares of common stock in the original company were cancelled upon the merger of the original company with the Interim Corporation. After the merger, The Matheson Company, Inc., had outstanding 400 shares of preferred stock of $100 par value and the 400 shares of common stock, no par value, which had been given as a bonus to purchasers of the preferred stock, and in addition there was outstanding 216 shares of common stock, no par value, which was turned over to a trustee to be delivered to the plaintiff upon the retirement, if that should occur by 1950, of all the preferred stock. The 616 shares of common stock with no cost basis to its owners had the voting rights. The preferred stockholders had no voting rights. The plaintiff had the voting rights and was entitled to any dividends payable on the 216 shares held in trust.
5. Following the reorganization of The Matheson Company in 1940, plaintiff owned 40 shares of its preferred stock; his wife, Grace Ferris, owned 126 shares, of which 100 shares were pledged as security for the $10,000 note given as part of the purchase price of the stock from the estate; his mother, Elizabeth Ferris, owned 15 shares; and his brother, L. W. Ferris, owned 4 shares, or a total of 185 shares. The preferred stock described above, owned by the plaintiff, his wife, and his brother, 170 shares in all, was redeemed for cash and retired prior to the year 1944.
6. The Matheson Company conducted its business in property leased from Hasselhuhn-Williams Company, the owner. In the summer of 1942, negotiations were entered into for the purchase of the property which were finally closed on October 9, 1942. The agreed purchase price was $11,000. A realty corporation, known as Ferian Eealty Corporation, was formed to purchase the property. The plaintiff became, and remained throughout all times material herein, the president of such corporation. At the time title was taken, the balance sheet of the corporation disclosed the cost of the property was $2,016.24 for the land and $11,550 for the buildings thereon. The additional cost over the negotiated price of $11,000 resulted from fees, surveys, back taxes *264 and other expenses. The balance sheet of the Ferian Realty Corporation at the time title was taken also shows as liabilities a first mortgage of $4,500, notes and loans payable of $7,600, and accrued expenses of $423.34. The Ferian Realty Corporation issued 616 shares, no par value, common stock, which were distributed pro rata to the common shareholders of The Matheson Company, Inc. The Ferlan Realty Corporation then leased the property so acquired to The Matheson Company at an annual rental of $3,600 per year.
7. During the year 1941, The Matheson Company, Inc., redeemed 75.5 shares of its preferred stock for cash. In 1942, the firm redeemed 172.70 shares of preferred stock for cash. By March 31, 1945, additional preferred stock had been redeemed for cash so that only 80 shares were outstanding and the paid-in capital was reduced to $8,000. None of the 80 shares of preferred stock outstanding by the latter date was owned by the plaintiff or his wife.
8. During the summer and fall of 1944, the plaintiff was engaged in negotiations with representatives of the Federal Deposit Insurance Corporation concerning a debt owed by the plaintiff dating back to 1929 and on which the plaintiff had, during the interim, made certain payments covering interest and on which some collateral had been applied in partial liquidation of the debt. The Federal Deposit Insurance Corporation had in the meantime acquired the right to payment of the debt from certain banks to which it was originally payable. By February 10,1945, the debt amounted to $19,925.87 principal, and $17,458.36 interest, a total of $37,384.23. Prior to such negotiations the plaintiff had been advised that the Federal Deposit Insurance Corporation intended to take necessary action to enforce collection of the above-described debt owing to it by the plaintiff. The plaintiff was further advised that representatives of the Federal Deposit Insurance Corporation knew of some person or persons who would pay $25,000 for the interest held by the plaintiff and his wife in The Matheson Company, Inc.
9. By a letter dated January 29,1945, the plaintiff offered the sum of $25,000 cash in full settlement of his indebtedness to the Federal Deposit Insurance Corporation. On February 9,1945, the plaintiff was notified by letter of the accept- *265 anee of such, offer provided certain securities then held as collateral were absolutely assigned to the Federal Deposit Insurance Corporation.
10. Plaintiff was then confronted with the problem of raising the $25,000 to complete the settlement with the Federal Deposit Insurance Corporation. A plan was worked out to raise the money through The Matheson Company, Inc., as plaintiff’s interests in that company and Ferian were the only assets which he owned. A plan, which hereafter will be more fully explained, was devised whereby The Matheson Company, Inc., was to issue 616 shares of new Class A stock redeemable at $80 per share. The corporate transaction was completed and the new Class A stock was issued effective as of April 5,1945, of which plaintiff and his wife, Grace Ferris, received 386 shares. On the same date, April 5, 1945, The Matheson Company immediately redeemed and retired 217 shares of the new Class A stock at $80 per share owned by plaintiff and, during the remainder of the year 1945, redeemed and retired at the same price an additional 135 shares, of which 106 shares were also owned by plaintiff or Grace Ferris, his wife.
11. The Board of Directors of The Matheson Company, Inc., consisted of plaintiff; a close friend, William B. Mehler; and his brother, Leonard W. Ferris. The minute book of the proceedings of the Board of Directors of The Matheson Company discloses no resolution or other action authorizing the calling for redemption of any of the Class A stock during the year 1945. Plaintiff and his wife merely endorsed their Class A stock certificates, turned them over to the company, and received checks in payment at the value of $80 per share.
12. At the time the settlement was effected and the plaintiff’s attorney paid over the $25,000, there was handed to the representative of the Federal Deposit Insurance Corporation a letter stating that the plaintiff elected to apply $16,500 toward the payment of interest and $8,500 toward the payment of principal. In the computation of the plaintiff’s taxable income for the year 1945 by the revenue agent, $5,710.13 of the sum paid in settlement of the aforementioned indebtedness was allowed as a deduction from income as a payment of interest. In the final determination of plain *266 tiff’s tax liability for the year 1945, the Commissioner of Internal Kevenue allowed $16,500 of the settlement payment as an interest deduction from taxable income.
13. To carry out the devised plan, plaintiff, as president of The Matheson Company, issued a letter dated March 16, 1945, to the common stockholders advising that it was desirable for the company to acquire the property in which it was doing business and to that end proposed the authorization of an issue of Class A stock without nominal or par value, callable at $80 per share and entitled to dividends at the rate of $4.80 per share per annum. It was also stated in the letter that if this stock was authorized the stock was to be offered in exchange for the common stock of Ferian Fealty Corporation on a share-for-share basis and once all the stock was acquired that company was to be dissolved. Accompanying this letter was a notice of the same date of the annual meeting of the stockholders on March 28,1945, in the office of Mehler and Mehler at Hackensack, New Jersey. The notice also stated that a proposal was to be presented amending the Certificate of Incorporation to authorize the issuance of 616 shares of Class A stock without nominal or par value. At the annual and special meeting of The Matheson Company stockholders on March 28, 1945, attended by plaintiff, his good friend, William B. Mehler, and his brother, L. W. Ferris, representing 3 shares of common stock in person and 545 shares by proxy, a resolution was adopted to amend the Certificate of Incorporation by providing for the authorization to issue 616 shares of Class A stock. This Class A stock was entitled to cumulative dividends of $4.80 per annum; had preference after the preferred stock but before the common stock upon dissolution; at the option of the company the whole or any part of the Class A stock outstanding by lot or in any such other manner as the Board of Directors might determine could be redeemed at any time at $80 per share plus accrued dividends but at least fifteen days’ notice was required to be given to the holders thereof of every redemption; and the holders were entitled to one vote for each share and thus had equal voting rights with the common stock. The company’s Certificate of Incorporation was sub *267 sequently amended and by reason thereof it was authorized to issue the Class A stock.
14. Pursuant to the aforementioned authorization, The Maitheson Company, by letter dated March 30,1945, signed by plaintiff as president and addressed to the stockholders of the Ferian Eealty Corporation, offered to exchange Matheson Class A stock for the common stock of the Ferian Realty Corporation on a share-for-share basis. On the same date, March 30, 1945, the Ferian Realty Corporation transmitted a letter to its stockholders signed by G. F. Ferris, plaintiff, recommending acceptance of the exchange of stock offer as being advantageous to them. Most of the stockholders of Ferian Realty Corporation promptly exchanged their common stock for the Class A stock of The Matheson Company. During the year 1945, the stockholders exchanged 606 shares out of 616 shares and subsequently the remaining 10 shares were exchanged.
15. Between April 5, 1945, and October 26, 1945, plaintiff and his wife endorsed the certificates for 323 shares of the Class A stock and turned them over to The Matheson Company for redemption although the company never authorized or called the stock for redemption. Checks were drawn and issued to plaintiff for the stock at $80 per share. During the year 1945, without the company making a call for redemption, other stockholders turned in certificates representing 29 shares of Class A stock for which they received $80 per share. On January 15, 1946, without the company making a call for redemption, plaintiff endorsed and turned in certificates for 63 shares of Class A stock for which he received payment of $80 per share. During 1946, other stockholders turned in 3 shares of the Class A stock for which they received $80 per share, without the company calling the stock for redemption.
16. During the year 1945, and before any of The Matheson Class A stock was turned in for redemption, there were outstanding 606 shares of the Class A and 616 shares of common stock, or a total of 1,222 shares, of which plaintiff and his wife owned 774 shares, or 63% of the voting stock. After the redemption of the Class A stock during 1945, there were outstanding 870 shares of voting stock as of January 1,1946, *268 of which plaintiff and his wife owned 451 shares, or 51.83%. On December 31, 1946, after the redemption of the additional 66 shares of Class A stock, there were outstanding 804 shares of voting stock of which plaintiff and his wife owned 388 shares, or 48.25%.
17. On January 15, 1946, plaintiff filed his individual income tax return for the year 1945, disclosing thereon adjusted gross income of $30,015.18, total deductions of $16,828.56, net taxable income of $13,186.62, and a tax liability of $3,281.51. The tax liability was paid by withholding from wages, payments on declared estimated tax during the year 1945, and by payment at the time the return was filed. On the return, plaintiff reported the redemption of 323 shares of The Matheson Company Class A stock as a long-term capital gain in the sum of $25,840, with a cost basis of zero, and included 50% thereof, or $12,920, as taxable income. Included in his claimed deductions reported on the return was the sum of $16,500 as interest paid to the Federal Deposit Insurance Corporation.
18. After examination, the revenue agent, in report dated February 3,1949, determined the sum of $25,840 received on redemption of The Matheson Company Class A stock was an ordinary dividend and not a capital gain and included the entire amount in taxable income. The revenue agent disallowed as a deduction for interest the sum of $10,789.87, holding that of the $25,636 (which included $636 realized by the FDIC on the sale of plaintiff’s collateral) paid to the Federal Deposit Insurance Corporation during the year 1945, $19,925.87 represented the debt principal and $5,710.13 represented interest. As a result of the adjustments, the revenue agent determined a deficiency of $14,508.10 for the year 1945. Subsequently, the entire amount of the claimed interest of $16,500 was allowed as a deduction, from which adjustment, together with others, resulted the determination of a deficiency of $6,876.60 for the year 1945. This deficiency, together with interest thereon of $2,176.30, was paid by plaintiff on July 13, 1951.
19. On January 15, 1947, plaintiff filed his individual income tax return for the year 1946, reporting thereon adjusted gross income of $16,931.45, deductions totaling $3,461.20, net *269 taxable income of $13,470.25, and a tax liability of $2,858.26. The tax liability was paid by withholding from wages, payments on declared estimated tax and final balance due at time of filing the return. Attached to the return was a schedule showing long-term capital gains of $5,040 on 63 shares of The Matheson Company Class A stock, with cost basis of zero, with 50% thereof includible as income, but plaintiff failed to include the $2,520 in taxable income.
20. After an examination, the revenue agent, in report dated October 4, 1949, determined that the sum of $5,040 received by plaintiff from the redemption of 63 shares of The Matheson Class A stock in 1946 was essentially equivalent to the distribution of a taxable dividend under Section 115 (g) of the Internal Revenue Code, and included the entire sum in taxable income. By reason of this adjustment to income, together with others, the revenue agent determined a deficiency of $2,854.69 against plaintiff for the year 1946. Thereafter, further other adjustments were made in determining plaintiff’s taxable net income for the year 1946 which resulted in the computation of a deficiency of $2,355.94. Under date of May 23, 1951, plaintiff filed a Waiver of Restrictions (Form 870-TS (modified)), agreeing to the immediate assessment and collection of the aforesaid deficiencies for the years 1945 and 1946, but reserved the right to file claims for refund for these years based solely on the grounds that the payments received in redemption of The Matheson Company’s Class A stock during these years were not essentially equivalent to distributions of taxable dividends within the meaning of Section 115 (g) of the Internal Revenue Code. Thereafter, plaintiff, on July 13, 1951, paid the deficiency of $2,355.94 determined for the year 1946, together with interest thereon of $604.25.
21. The taxable income reported by plaintiff on each of his returns filed for the years 1945 and 1946 do not contain any amount as dividends received on The Matheson Company Class A stock or the common stock. In the final computation of tax liability, there was no inclusion of any dividends from The Matheson Company in the determination of taxable income.
*270 22. On July 9,1951, plaintiff filed claims for refund in the amount of $9,654.53 for the year 1945 and $1,350.43 for the year 1946. The claims for refund were grounded upon the assertion that the amounts received by plaintiff during the years 1945 and 1946 from the redemption of The Matheson Company’s Class A stock represented capital gain and not a taxable dividend. By letter dated January 11, 1952, plaintiff was advised by registered mail of the disallowance in full of these two claims for refund.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is entitled to recover, with interest as provided by law.
Entry of judgment is suspended pending the filing of a stipulation by the parties showing the amount due plaintiff in accordance with this opinion.
In accordance with the foregoing opinion and the filing of a stipulation by the parties, it was ordered on April 3, 1956, that judgment for the plaintiff be entered as follows:

Year Tax Interest Paid Total

1945_$7, 477. 67 $2,176. 30 $9,653. 97
1946_ 729. 08 186.99 916. 07