ESTATE of Otis E. BYRD, Jimmie Lou Byrd, Administratrix, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 24135.

United States Court of Appeals Fifth Circuit.

Dec. 28, 1967.

Rehearing En Banc Denied March 26, 1968.

Macbeth Wagnon, Jr., Lee C. Bradley, Jr., Birmingham, Ala., for petitioner.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Marselli, David O. Walter, Robert M. Willan, Grant W. Wiprud, Stuart A. Smith, Attys., Dept. of Justice, Lester R. Uretz, Chief Counsel, I.R.S., Christopher J. Ray, Atty., I.R.S., Washington, D. C., for respondent.

Before BROWN, Chief Judge, AINSWORTH, Circuit Judge, and SUTTLE, District Judge.

JOHN R. BROWN, Chief Judge:

This appeal presents a novel question in the field of income taxation. The question is whether, for purposes of a stock redemption that will qualify for exchange treatment under § 303,[1] 26 U.

---

1. "SEC. 303. DISTRIBUTIONS IN REDEMPTION OF STOCK TO PAY DEATH TAXES.

"(a) In general.—A distribution of property to a shareholder by a corporation in redemption of part or all of the stock of such corporation which (for Federal estate tax purposes) is included in determining the gross estate of a decedent, to the extent that the amount of such distribution does not exceed the sum of—

"(1) the estate, inheritance, legacy, and succession taxes (including any interest collected as a part of such taxes)

imposed because of such decedent's death, and

"(2) the amount of funeral and administration expenses allowable as deductions to the estate * * *"

shall be treated as a distribution in full payment in exchange for the stock so redeemed.

"(b) Limitations on application of subsection (a).—

"(1) Period for distribution * * *

"(2) Relationship of stock to decedent's estate.—

"(A) In general.—Subsection (a) shall apply to a distribution by a cor-

S.C.A. § 303, Taxpayer [2] can include not only stock owned directly by him in the redeeming corporations but also the value of stock owned indirectly by him through another corporation which owns shares in the redeeming corporations. Belatedly asserted in the Tax Court is the further contention that the redemption qualifies for exchange treatment under § 302 [3] as "not essentially equivalent to a dividend." The Tax Court, upholding the Commissioner, determined

that the redemptions were taxable as dividends. We affirm. Proving again the sometimes weird tax world results, Tandy Leather Co. v. United States, 5 Cir., 1965, 347 F.2d 693, 695 (concurring opinion), in the first the taxpayer is denied the benefit of attribution, cf. Phinney v. Tuboscope Co., 5 Cir., 1959, 268 F.2d 233, while in the second the Government gets it.

The facts, fully stipulated, can be quickly presented with the aid of a

poration only if the value (for Federal estate tax purposes) of all of the stock of such corporation which is included in determining the value of the decedent's gross estate is either—

"(i) more than 35 per cent of the value of the gross estate of such decedent, or

"(ii) more than 50 per cent of the taxable estate of such decedent.

"(B) *Special rule for stock of two or more corporations.*—For purposes of the 35 per cent and 50 per cent requirements of subparagraph (A), stock of two or more corporations, with respect to each of which there is included in determining the value of the decedent's gross estate more than 75 per cent in value of the outstanding stock, shall be treated as the stock of a single corporation. For the purpose of the 75 per cent requirement of the preceding sentence, stock which, at the decedent's death, represents the surviving spouse's interest in property held by the decedent and the surviving spouse as community property shall be treated as having been included in determining the value of the decedent's gross estate."

2. Estate of Otis E. Byrd, Jimmie Lou Byrd, Administratix.

3. The provision here relied on is § 302(b)(1), but other parts of § 302 are also set out for purposes of reference and analysis.

### "SEC. 302. DISTRIBUTIONS IN RE-DEMPTION OF STOCK

"(a) *General rule.*

If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in

part or full payment in exchange for the stock.

"(b) *Redemptions treated as exchanges.*—

"(1) *Redemptions not equivalent to dividends.*—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

"(2) *Substantially disproportionate redemption of stock—* * * *

"(3) *Termination of shareholder's interest—* * * *

"(4) *Stock issued by railroad corporations in certain reorganizations—* * *

"(5) *Application of paragraphs.*—In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. * * *

"(c) *Constructive ownership of stock.*—

"(1) *In general.*—Except as provided in paragraph (2) of this subsection, section 318 (a) shall apply in determining the ownership of stock for purposes of this section.

* * * * *

"(d) *Redemptions treated as distributions of property.*—

Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317 (b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies.

"(e) *Cross references.*—

For special rules relating to redemption—

(1) Death Taxes.—Of stock to pay death taxes, see section 303.

(2) Section 306 Stock.—Of section 306 stock, see section 306.

(3) Liquidations.—Of stock in partial or complete liquidation, see section 331."

schedule [4] in which bracketed numbers [1] [2], etc. have been inserted for ease of reference. Otis Byrd died in 1957 owning substantial and controlling in-

[4] No. 24135—Byrd v. Commissioner
Schedule of Ownership

| [1] Corporation | * | [2] Capital Stock Outstanding | [3] Value | [4] Decedent's Ownership Number | [5] % | [6] Value | [7] Owned by Peoples Savings Number | [8] Value | [9] Stock in Redeeming Corporations Included in Gross Estate Decedent's | [10] Peoples Savings | [11] Total & % | [12] Stock Redeemed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peoples Savings | C | 50000 | $175000 | 44450 | 88.9 | $155575 | | | | | | |
| Alabama Banking | A | 290 | $150000 | 190 | 66 | $ 99000 | 99 | $ 49500 | $ 99000 | $ 4400550 | $14300550 95.33% | (100 sh.) $50000 |
| | B | 10 | | 8 | | | | | | | | |
| Hub City | C | 700 | 140000 | 227 | 32.4 | 45400 | 471 | 94200 | 45400 | 8374380 | 12914380 92.24% | (127 sh.) 25400 |
| Rock Finance | A | 1000 | 15000 | 1000 | 26.7 | 15000 | 221 | 33150 | 15000 | 2947035 | 4447035 79.05% | (900 sh.) 13500 |
| | B | 275 | 41250 | — | | | | | | | | |
| Totals | | | | | | $159400 / $314975 | | $176850 | $159400 | $15721965 | $31661965 | $88900 |

* Class: C=common; A=class A (non-voting); B=class B (voting)

terests, directly ([4], [5], [6],) and indirectly ([7], [8]), in four corporations. The assets of one corporation, Peoples Savings, consisted primarily (but not exclusively) of stock in the other three corporations—Alabama Banking, Hub City, and Rock Finance (see [7], [8]). The decedent owned 88.9% of the stock in Peoples Savings. In valuing the decedent's gross estate,[5] there was included not only the value of the stock owned directly by the decedent in the redeeming corporations, but also the value of decedent's stock ownership of 88.9% of Peoples Savings.

In 1959, a part of the stock owned directly by the decedent in three of the corporations—Alabama Banking, Hub City, and Rock Finance—was redeemed for $88,900 [12], the same amount for which it was valued for estate purposes. The redemption was for the purpose of providing funds with which to discharge certain estate expenses[6] in excess of $100,000.

In the estate's income tax return for the taxable year ending December 31, 1959, Taxpayer treated the proceeds of the redemptions as distributions in full payment in exchange for the stock re-deemed under § 303, "Redemptions to Pay Death Taxes." The Commissioner disagreed, and assessed a deficiency on the ground that the redemptions failed to qualify for exchange treatment under either § 302 or § 303[7] and that therefore the proceeds were to be treated as dividends under § 301. Confining its consideration to taxpayer's § 303 contentions in the petition[8] the Tax Court agreed. Byrd v. Commissioner, 46 T.C. 25 (1966). By motion for reconsideration and motions to amend the petition and reopen the record, Taxpayer sought to raise the § 302 contention that the distributions were "not essentially equivalent to a dividend," but after a hearing, these motions were denied.

## I.

The only issue initially presented to and determined by the Tax Court (see note 7 supra) was whether the distributions received by the estate on the redemption of stock qualified under § 303 for treatment as distributions in exchange for the stock, or failing that, under § 301 as dividends. This in turn, depends upon whether for purposes of satisfying the 75% requirement of § 303 (b) (2) (B), and therefore the 35% or

---

5. The figures are:

|  |  | percentage 35% | values 50% |
|---|---|---|---|
| Value gross estate | $728,624.85 | $255,018.70 |  |
| Taxable estate | $314,512.19 |  | $157,256 |

6. The following expenses were specified:

| | |
|---|---|
| Federal Estate Tax | $ 86,343.90 |
| Alabama Estate Tax | 5,984.39 |
| Funeral and Administration Expense | 8,615.80 |
| | $100,944.09 |

The Government does not contest that these expenses qualify under § 303(a).

7. "Explanation of Adjustment "(a) It is determined that you realized dividend income in the amount of $88,900 by the redemption of the stock listed below. It is further determined that such redemption did not meet the requirements of section 302 and/or 303 of the Internal Revenue Code of 1954. Accordingly, taxable income is increased by the amount of $88,900. Section 301 of the Internal Revenue Code of 1954."

8. The Tax Court noted that the Commissioner had "also determined that such distributions did not qualify as distributions in part or full payment in exchange for the stock within the contemplation of § 302 of Code, and that therefore such distributions constituted dividends. These latter determinations of the [Commissioner] have not been put in issue."

50% requirements of § 303(b) (2) (A) (see note 1 supra) Taxpayer can include not only the value of the stock directly owned by the decedent in the redeeming corporation (which concededly he can) but also the value of the stock indirectly owned by the decedent in the redeeming corporations through his ownership of Peoples Savings. The Government agrees that if Taxpayer can include the value of the stock indirectly owned in the redeeming corporations, then the percentage requirements of § 303 will be met and the distributions would qualify for exchange treatment.

In support of its contention that the indirectly owned stock may be taken into account, Taxpayer asserts two basic arguments. First, Taxpayer urges that under the constructive ownership rules of § 318, the stock owned by Peoples Savings in the redeeming corporations was attributed to decedent to the extent of his proportionate ownership in Peoples Savings. Such ownership, if attributable is more than sufficient (see schedule [11] and note 5 supra) to satisfy the percentage requirements of § 303. Second, relying on the wording of § 303 (b) (2) (B), Taxpayer urges that even

though owned by Peoples Savings, the stock of the redeeming corporations literally was "included in determining the value of the decedent's gross estate * * *." This is so because decedents' 88.9% ownership of Peoples Savings was determined solely by reference to the value of the underlying assets—the stock owned by it in the redeeming corporations.

a. Constructive Ownership Under § 318

On this appeal, Taxpayer relies primarily on the applicability to § 303 of the constructive ownership rules of § 318, 26 U.S.C.A. § 318.[9] Although § 318 is not expressly or by cross-reference [10] made applicable to § 303, Taxpayer strenuously argues that this was neither legislative oversight nor an expression of Congressional intent that the attribution rules should not apply. Quite the contrary, it urges that such provision was deemed unnecessary by Congress, indeed its inclusion would have been superfluous. This is so from an analysis of the statutory scheme. Thus, the argument runs, the statutory provision that levies the tax, § 302(d), has certain exceptions, some of them found in § 302 (b), but also including § 303. The at-

9. "Sec. 318. *Constructive ownership of stock*

"(a)   *General rule.*—

For purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable— * * *

"(2)   *Partnerships, estates, trusts, and corporations.*— * * *

"(C)   *From Corporations.*—If 50 percent or more in value of the stock in a corporation is owned, directly or indirectly, by or for any person, such person shall be considered as owning the stock owned, directly or indirectly, by or for such corporation, in that proportion which the value of the stock which such person so owns bears to the value of all the stock in such corporation. * * *

"(b)   *Cross references.*—

For provisions to which the rules contained in subsection (a) apply, see—

(1)   section 302 (relating to redemption of stock);

(2)   section 304 (relating to redemption by related corporations);

(3)   section 306(b) (1) (A) (relating to disposition of section 306 stock);

(4)   section 334(b) (3) (C) (relating to basis of property received in certain liquidations of subsidiaries);

(5)   section 382(a) (3) (relating to special limitations on net operating loss carryovers);

(6)   section 856(d) (relating to definition of rents from real property in the case of real estate investment trust);

(7)   section 958(b) (relating to constructive ownership rules with respect to controlled foreign corporations); and

(8)   section 6038(d) (1) (relating to information with respect to certain foreign corporations)."

10.   Thus, § 318 (see note 9 supra) provides at the outset for its application only to "those provisions of this subchapter to which the rules contained in this section are *expressly made applicable* * * *," followed in § 318(b) by cross-references to the "provisions to which the rules contained in subsection (a) apply * * *." There is no cross-reference to § 303.

tribution rules of § 318 are expressly and by cross-reference made applicable to § 302 through § 302(c). Consequently, the same rules—i. e., the attribution rules—which are applied in fixing the scope of the levy must also be applied in ascertaining the scope of all exceptions to the levy, which includes § 303.

A careful examination, not only of the wording of the provisions in question but more important of their legislative history, convinces us that Taxpayer's argument that § 318 attribution should apply under § 303(b) (2) (B) cannot prevail. The legislative revisions of the 1954 Code sections relating to "corporate distributions and adjustments" represented a "complete structural overhaul" of existing law.[11] In these revisions, Congress sought not only to clarify existing law, but also to liberalize provisions for tax relief where warranted while at the same time precluding some then-existing methods of tax avoidance. These objectives find expression in the provisions here in question. As a tax relief provision, § 303 was first added to the Code by the Revenue Act of 1950. For estates which consisted primarily of stock in a closely held business, its purpose was to enable the estate to discharge certain obligations without having to dispose of the family interest in the business. But Congress was explicit that "the circumstances under which such relief is available are narrowly defined and will restrict relief to situations in which true hardship exists."[12] In considering the revisions of the 1954 Code, Congress held the view that the existing provision was inadequate and that further liberalization was needed.[13] One of the changes[14] made, therefore, was to add a provision, now § 303(b) (2)

11. 1954 U.S.Code Cong. & Adm.News, 83rd Cong., 2nd Sess., p. 4059.

12. "It has been brought to the attention of your committee that the problem of financing the estate tax is acute in the case of estates consisting largely of shares in a family corporation. The market for such shares is usually very limited, and it is frequently difficult, if not impossible, to dispose of a minority interest. If, therefore, the estate tax cannot be financed through the sale of the other assets in the estate, the executors will be forced to dispose of the family business. In many cases the result will be the absorption of a family enterprise by larger competitors, thus tending to accentuate the degree of concentration of industry in this country. * * *

"This statutory extension of the principle contained in the existing income tax regulations will provide an effective method of financing the payment of the tax when an estate consists primarily of stock in a closely held business, thus eliminating in most cases, the need for disposing of the family's interest in the business. On the other hand the circumstances under which such relief is available are narrowly defined and will restrict relief to situations in which true hardship exists."
Senate Report on § 208, Revenue Act of 1950, 1950–2 CB 427–28.

13. "Your committee has retained and broadened existing provisions of law insuring that stock of certain corporations may be retained to pay death taxes free of any dividend liability. This treatment furthers your committee's policy of preventing the forced sale of family-held businesses to large corporate enterprises solely because of the combined impact of estate and income taxes. Experience since enactment of the existing provisions has proven that hardship may still exist because of the unduly restrictive nature of the operations of this provision".
1954 U.S.Code Cong. & Adm.News, 83rd Cong., 2d Sess., pp. 4061–62.

14. This and the other changes are set out in the report of the Senate Finance Committee.
"Your committee retains the provisions of existing law allowing stock to be redeemed to pay death taxes without dividend consequences. Your committee's bill includes those provisions of the House bill which would broaden the application of this section. Thus, it allows stock to be redeemed where it not only constitutes 35 percent of the value of the gross estate but also if it constitutes 50 percent of the value of the net estate. Thus, the marital deduction allowed for estate tax purposes will not preclude the availability of this special redemption provision. As under the House bill, the provision also (1) includes funeral and administration expenses as one of the purposes for which stock may be redeemed, (2) extends the time for redemption to 60 days after a decision of the Tax Court con-

(B), which would allow stock of two or more corporations to be redeemed if more than 75 percent[15] in value of the outstanding stock of each corporation was included in the decedent's gross estate. Taxpayer argues that this expressed legislative purpose and these 'liberalizing' changes require the conclusion that Congress did intend the constructive ownership rules of § 318 to apply in the present factual situation in order to provide relief.

In the enactment of § 318, however, Congress had in mind an objective different from that of § 303. Section 318, making its first appearance in the 1954 Code insofar as corporate redemptions and distributions were concerned,[16] was enacted primarily as a device to prevent tax avoidance. In 318, Congress sought to articulate, with precision (see note 16 supra), the circumstances in which ownership of stock by one person, trust, corporation, etc., would for the purpose of the provisions to which § 318 was "expressly made applicable" be attributed to another person. This selective applicability was accomplished in subsection (b) where the sections to which the rules of constructive ownership would apply were specifically set out. While

there are cross-references in § 318 to §§ 302 and 304, there is none to § 303. Moreover, in those sections to which it is made applicable,[17] there is specific provision that the terms of § 318 shall apply. Again, there is none in § 303.

Taxpayer goes too far in characterizing the relief afforded by § 303 as an "exception" to the levy provision of § 302 (d). This fails to recognize that § 303 is a self-contained, independent provision of the Code contemplating relief in a specified, narrow situation which if satisfied, removes the transaction from the dividend consequences of § 301. The application or availability of § 303 relief is in no way dependent upon the provisions of § 302. We think it important, therefore, that, in the legislative history of these provisions as finally enacted, there is no mention in the analysis of § 303 that the rules of constructive ownership shall apply. Nor in the analysis of § 318 is there any mention that the attribution rules should apply to the relief provision of § 303. The liberalizing effect of the amendment in § 302(b) (2) (B) contemplated the situation where there were "two or more" closely held corporations. Had it so intended, Congress could easily have extended re-

cerning the estate tax liability has become final, and (3) allows stock of 2 or more corporations to be redeemed if more than 75 percent in value of the outstanding stock of each corporation is included in the decedent's gross estate with an additional provision to prevent discriminations against estates of decedents in community property States."
S.Rep. 1622, 1954 U.S.Code Cong. & Adm.News, 83rd Cong. 2d Sess. p. 4676.

15. The legislative history fails to disclose why the 75 percent figure was chosen. Mertens makes this analysis. "Although it is not expressed in the Committee Report it is evident that the requirement that 75 percent in value of the stock must be included in the decedent's gross estate before the stock of two or more corporations may be used to meet the basic tests of § 303, reflects the view of Congress that the redemption provisions under § 303 should not be construed as granting permission for an investment portfolio of the decedent to be redeemed on such favorable terms." Mertens, Law of Fed-

eral Income Taxation, Code Commentary § 303(b):3(1964).

16. "Section [318] articulates the circumstances under which ownership of stock by one person shall for the purpose of the sections to which section [318] is specifically made applicable be attributed to such other person. * * *
"While statutory rules for constructive attribution of ownership are provided under existing law in certain areas, * * * no specific statutory guidance is at present provided for stock ownership in the area of corporate distributions and adjustments. As a result the administration * * * of existing law has become clouded with uncertainty by reason of executive application of rules of attribution of ownership. Your committee intends, through section [318], to remove these uncertainties by providing in the bill precise rules for attribution where this is appropriate."
1954 U.S.Code Cong. & Adm.News, 83rd Cong., 2d Sess., p. 4234.

17. See e.g., § 302(c) and § 304(c) (2).

lief by allowing Taxpayer the advantage of the constructive ownership rules of § 318 where substantial amounts of the stock of the redeeming corporations was held by another corporation which Taxpayer controlled. But this it did not do.[18]

This conclusion is also supported by a comparison of § 303 with another Code section providing relief where closely held corporations are involved. Section 6166, 26 U.S.C.A. § 6166,[19] allows an extension of time for the payment of es-

---

18. Congress in 1964 again considered the purpose of § 318. The underlying purpose of § 318 there reiterated seems pertinent to the factual situation here involved.

"When a corporation redeems part of a shareholder's stock, in many circumstances, this redemption is treated as the distribution of a dividend. However, where all of a shareholder's stock is redeemed the amount received generally is treated as a distribution in exchange for the stock, gain or loss being determined by reference to the cost (or other basis) for the stock surrendered. In the past a taxpayer occasionally attempted to avoid the dividend rule referred to above by retaining his own holdings of stock but having all of the stock redeemed which was held by a close member of his family or from a partnership, estate, trust, or corporation in which he had a substantial interest. *Alternatively, the rule was avoided by having all of his own stock redeemed, but providing for the retention of stock held by a partnership, estate, trust, or corporation in which he had a substantial interest or by a close member of his family.*

"To forestall such tax avoidance, the 1954 code contains certain stock 'attribution' rules wherein stock held by a close family member, or by a partnership, estate, trust, or corporation in which he has an interest, is attributed to the person in question in determining whether a distribution from a corporation is in partial or complete liquidation of his interest in the corporation. These attribution rules (contained in sec. 318 of the code) not only are applicable in determining whether a stock redemption is to be treated as a dividend or as an exchange for stock (sec. 302) but also apply to numerous other situations as well. However, in these other cases, the applicability of the rules vary somewhat." (Emphasis added.)
S.Rep. 1240 to accompany H.R. 10467 amending § 318(a), 88th Cong. 2d. Sess. (1964)

19. Section § 6166 was added to the Code by the Small Business Tax Revision Act of 1958. Pub.Law 85–866, § 206(a), Sept. 2, 1958.
"SEC. 6166. Extension of time for payment of estate tax where estate consists largely of interest in closely held business

"*(a) Extension permitted.—*
If the value of an interest in a closely held business which is included in determining the gross estate of a decedent who was (at the date of his death) a citizen or resident of the United States exceeds either—
(1) 35 percent of the value of the gross estate of such decedent, or
(2) 50 percent of the taxable estate of such decedent, the executor may elect to pay part or all of the tax imposed by section 2001 in two or more (but not exceeding 10) equal installments. Any such election shall be made not later than the time prescribed by section 6075(a) for filing the return of such tax (including extensions thereof), and shall be made in such manner as the Secretary or his delegate shall by regulations prescribe. If an election under this section is made, the provisions of this subtitle shall apply as though the Secretary or his delegate were extending the time for payment of the tax. For purposes of this section, value shall be value determined for Federal estate tax purposes.
"*(b) Limitation.—*
The maximum amount of tax which may be paid in installments as provided in this section shall be an amount which bears the same ratio to the tax imposed by section 2001 (reduced by the credits against such tax) as the value of the interest in a closely held business which qualifies under subsection (a) bears to the value of the gross estate.
"*(c) Closely held business.—*
For purposes of this section, the term 'interest in a closely held business' means
— * * *
(3) stock in a corporation carrying on a trade or business, if—
(A) 20 percent or more in value of the voting stock of such corporation is included in determining the gross estate of the decedent, or
(B) such corporation had 10 or less shareholders. For purposes of this subsection, determinations shall be made as of the time immediately before the decedent's death.
"*(d) Special rule for interests in two or more closely held businesses.—*
For purposes of subsection (a), (b), and (h) (1), interests in two or more

tate taxes where the estate consists largely of the interest in a closely held business. Its structure and purpose [20] is very similar to that of § 303. In particular, while provision is made for stock of two or more closely held corporations there is no inclusion, by cross-reference or otherwise, of the rules of constructive ownership.

■ We conclude that under the factual situation here involved, Taxpayer fails to comply with the narrowly defined requirements for § 303 relief. The constructive ownership rules of § 318 are not applicable to § 303, and therefore, for purposes of satisfying the percentage

requirements of § 303, the stock ownership of Peoples Savings in the three redeeming corporations is not attributed to Taxpayer.

b. § 303(b) (2) (B)—Included in Determining the Value of the Gross Estate

■ Nor do we think there is any merit to Taxpayer's alternative contention that under the language of § 303(b) (2) (B), the stock of the redeeming corporations held by Peoples Savings was "included in determining the value of the decedent's gross estate." Taxpayer's argument in this regard rests on the fact that the value of decedents' owner-

---

closely held businesses, with respect to each of which there is included in determining the value of the decedent's gross estate more than 50 percent of the total value of each such business, shall be treated as an interest in a single closely held business. For purposes of the 50 percent requirement of the preceding sentence, an interest in a closely held business which represents the preceding sentence, an interest in a closely held business which represents the surviving spouse's interest in property held by the decedent and the surviving spouse as community property shall be treated as having been included in determining the value of the decedent's gross estate. * * *

"(h) Acceleration of payment.—

(1) Withdrawal of funds from business; disposition of interest.—

(A) If—

(i) aggregate withdrawals of money and other property from the trade or business, an interest in which qualifies under subsection (a), made with respect to such interest, equal or exceed 50 percent of the value of such trade or business, or

(ii) 50 percent or more in value of an interest in a closely held business which qualifies under subsection (a) is distributed, sold, exchanged, or otherwise disposed of, then the extension of time for payment of tax provided in this section shall cease to apply, and any unpaid portion of the tax payable in installments shall be paid upon notice and demand from the Secretary or his delegate.

(B) In the case of a distribution in redemption of stock to which section 303 (or so much of section 304 as relates to section 303) applies—

(i) subparagraph (A) (i) does not apply with respect to withdrawals of money and other property distributed;

and for purposes of such subparagraph the value of the trade or business shall be considered to be such value reduced by the amount of money and other property distributed, and

(ii) subparagraph (A) (ii) does not apply with respect to the stock redeemed; and for purposes of such subparagraph the interest in the closely held business shall be considered to be such interest reduced by the value of the stock redeemed. * * *

20. "This provision is primarily designed to make it possible to keep together a business enterprise where the death of one of the larger owners of the business results in the imposition of a relatively heavy estate tax. Where the decedent had a substantial proportion of his estate invested in the business enterprise, under existing law this may confront the heirs with the necessity of either breaking up the business or of selling it to some larger business enterprise, in order to obtain funds to pay the Federal estate tax. Your committee believes that this result has an especially unfortunate result in the case of small businesses, which traditionally also are closely held businesses. Therefore, although not removing any Federal estate tax in these cases, your committee hopes that by spreading out the period over which the estate tax may be paid, it will be possible for the estate tax in most cases to be paid for out of earnings of the business, or at least that it will provide the heirs with time to obtain funds to pay the Federal estate tax without upsetting the operation of the business. Your committee believes that this provision is particularly important in preventing corporate mergers and in maintaining the free enterprise system." H.Rep. 2198, 85th Cong., 2d Sess. (1958)

ship in Peoples Savings for estate tax purposes was ultimately fixed at 88.9% of the value fixed by the Commissioner for the stock of the redeeming corporations. Taxpayer concludes in effect that since the estate valuation of its ownership in Peoples Savings represented the value of the stock of the redeeming corporations, the requirement of § 303(b) (2) (B) was satisfied. We cannot agree.

Doubtless the valuation of stock in personal or closely held companies may sometimes if not usually be made with reference to the value of its underlying assets.[21] But this is far removed from concluding that such valuation represents for estate tax purposes the inclusion in the gross estate of the various underlying assets whose values made up the computation.

The Code provides that the "value of the gross estate of the decedent shall be determined by including * * * the value at the time of his death of all property, real or personal, tangible or intangible, * * *. 26 U.S.C.A. § 2031 (a). This includes, of course, the stock of Peoples Savings owned by the decedent. But Taxpayer's argument fails to recognize the basic character of the ownership of corporate stock. Such ownership is personal property, incorporeal in nature, representing a distinct, undivided share or interest in the common property of the corporation *but* conferring no title to any of the corporate assets. Each share is property distinct from the tangible property of the corporation. See generally 18 Am. Jur.2d Corporations § 209 (1965).

When this is recognized, Taxpayer's argument dissolves. The gross estate included the value of the stock of four corporations, one of which—Peoples Savings—owned substantial amounts of stock of the other three corporations. Nevertheless, with respect to Peoples Savings, the value that was "included in determining the value of decedents' gross estate" was the *value of Peoples Savings stock*. That this value was determined primarily, perhaps even exclusively, by reference to the value of stock it held in other corporations does not change this economic-legal fact for purposes of § 303.

## II.

At this point, the parties reverse field, the Government now demanding application of the rules of constructive ownership, Taxpayer resisting. The battleground has shifted to the muddled field[22] of § 302(b) (1), Taxpayer urging that the redemptions qualify for exchange treatment as "not essentially equivalent to a dividend."

At the outset, the Government challenges Taxpayer's right here to raise an issue belatedly asserted and not considered by the Tax Court. As the Gov-

---

21. Taxpayer cites Revenue Ruling 54–77, 1954–1, C.B. 187 at § 5(b).

"The value of the stock of a personal or family holding company is closely related to the value of the assets underlying the stock. For companies of this type the appraiser should determine the fair market values of the assets of the company. * * * The market values of the underlying assets give due weight to potential earnings and dividends of the particular items of property underlying the stock, capitalized at rates deemed proper by the investing company at the date of appraisal. * * * For these reasons adjusted net worth should be accorded greater weight in valuing the stock of a closely held family or personal holding company than any of the other customary yardsticks of appraisal, such as earnings and dividend paying capacity." See also Estate of Levenson v. Commissioner of Internal Revenue, 3 Cir., 1960, 282 F.2d 581; Richardson v. Commissioner of Internal Revenue, 2 Cir., 1945, 151 F.2d 102, cert. denied 326 U.S. 796, 66 S.Ct. 490, 90 L.Ed. 485; Drybrough v. U. S., W.D.Ky., 1962, 208 F.Supp. 279.

22. The problems presented in application of § 302 have previously been characterized by this Court as "nightmarish." United States v. Fewell, 5 Cir., 1958, 255 F.2d 496, 499. See Moore, Dividend Equivalency—Taxation of Distributions in Redemptions of Stock, 19 Tax.L.R. 249 (1964).

ernment points out, it is the general rule that an Appellate Court will not consider a point not raised in or decided by the Tax Court.[23] But this is not the case here. The notice of deficiency (see note 7 supra) specified that Taxpayer failed to qualify for relief under either § 303 or § 302. Although not initially asserted by Taxpayer or considered by the Tax Court, Taxpayer's § 302 contentions were raised, briefed, and argued before the Tax Court on motion for reconsideration and to amend the petition and reopen the record.[24] Raising an issue by timely motion for reconsideration has been held sufficient to enable review. Bell v. Commissioner of Internal Revenue, 3 Cir., 1943, 139 F.2d 147, 148. While this does not necessarily require that the reviewing Court look at the intrinsic merits, rather than the more limited and more usual problem asserted here by Taxpayer of abuse of discretion in not granting a reopening, since the § 302 contention "is fairly put in issue by the pleadings and proof, and is not abandoned," Maxwell v. United States, 5 Cir., 1964, 334 F.2d 181, 184, we think we should reach the issue of attribution on the merits.

In doing so we are again faced with the problem of whether, under § 302(b) (1), the constructive ownership rules of § 318 apply. Taxpayer's contention rests on the proposition that if each corporation is separately treated, the redemptions significantly reduced his proportionate ownership and control in the redeeming corporations, and consequently under prior decisions [25] were not "essentially equivalent to the distribution of a taxable dividend." If § 318 applies, however, the attributed ownership from Peoples Savings would render the change in control virtually negligible.

■ While the question is not free of doubt,[26] we think that the constructive ownership rules are applicable under § 302(b) (1). Section 302(c) incorporates generally in § 302 the attribution rules of § 318 (with certain exceptions inapplicable here.) The regulations are

---

**23.** Helvering v. Cement Investors, Inc., 1942, 316 U.S. 527, 62 S.Ct. 1125, 86 L. Ed. 1649; General Utilities & Operating Co. v. Helvering, 1935, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154; Helvering v. Salvage, 1936, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511; United States v. Dresser Industries Inc., 5 Cir., 1963, 324 F.2d 56. See generally 9 Mertens, Federal Income Taxation § 51.26 (1965).

**24.** In its motion, Taxpayer sought to include the following facts deemed pertinent to its § 302(b) (1) contentions.

"A. Petitioner respectfully moves the court to permit petitioner to amend its petition by adding thereto the following allegations:

"1. The redemptions of stock in [Hub City], [Alabama Banking] and [Rock Finance] referred to in the Petition and in the Stipulation of Facts are the only stock redemptions by said corporations. No stockholder other than petitioner has redeemed any stock in the said redeeming corporations.

"2. The changes in petitioner's relative ownership (disregarding the stock owned by petitioner through Peoples Savings Life Insurance Company) of the said redeeming corporations effected by the redemptions in question were as follows:

| | Petitioner's Ownership Before | Petitioner's Ownership After |
|---|---|---|
| Hub City | 32.4% | 17.5% |
| Alabama Banking | 66.0% | 49.0% |
| Rock Finance | 78.4% | 25.7% |

\* \* \* \* \*

"B. Petitioner further moves the court to order reopening of the record in this case for the purpose of receiving evidence relating to the foregoing allegations."

**25.** Taxpayer relies on:
Cobb v. Callan Court Co., 5 Cir., 1960, 274 F.2d 532; Lukens' Estate v. Commissioner of Internal Revenue, 3 Cir., 1957, 246 F.2d 403; Northrup v. United States, 2 Cir., 1957, 240 F.2d 304; Smith v. United States, 1955, 130 F.Supp. 586, 131 Ct.Cl. 748; Ferris v. United States, 1955, 135 F.Supp. 286, 133 Ct.Cl. 257; Trust for Rosemary case Wier, T.C. Memo No. 31579, 1952 P-H Memo T.C. ¶52,199 (June 25, 1952).

**26.** See Rabkin & Johnson, Federal Income, Gift, and Estate Taxation § 24.-02A(4) (1966).

explicit.[27] The Tax Court has applied the attribution rules under § 302(b) (1),[28] as have the First [29] and Tenth Circuits.[30]

When account is taken of the stock constructively owned by Taxpayer, it is apparent that there has been no significant modification of the shareholder's interests [31] in the redeeming corporations as a result of the distribution. The insubstantial change in stockholder ownership and control is a factor bearing heavily against Taxpayer's right to § 302 (b) (1) relief. Moreover, aside from this factor and contrary to Taxpayer's assertions there is little else in the record which relates to the § 302 contention.[32] Under these circumstances, Taxpayer's further contention that the Tax Court abused its discretion in denying the motion to amend petition and reopen case for consideration of the § 302 issue also fails.

## III.

One tag end remains. Throughout the briefs and on oral argument, Taxpayer fervently argued that it would be totally inconsistent and manifestly unjust to apply the rules of attribution under § 302 yet deny their application under § 303, in both instances resulting in the denial of relief. We have, however, exhaustively examined the legislative history of these and similar provisions of the Code and have concluded that it accords with Congressional purpose and intent. If any inconsistencies exist, they are the product of a body having the power to be not consistent. Whether and to what extent taxes should be laid on these distributions or exemption should be granted where death intervenes involves "consideration of many complex, intricate, and sometimes technically significant factors which Congress, the weaver, evaluates as," like Penelope, "it weaves and unweaves the seamy web men call tax law." United States v. Bond, 5 Cir., 1958, 258 F.2d 577, 584. If inconsistencies spoil the garment, the change is for Congress, not us.

Affirmed.

## ON PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25(a), subpar. (b), the Petition for Rehearing En Banc is denied.

27. "The question whether a distribution in redemption of stock of a shareholder is not essentially equivalent to a dividend under § 302(b) (1) depends upon the facts and circumstances of each case. One of the facts to be considered in making this determination is the constructive stock ownership of such shareholder under § 318(a)."

28. Thomas G. Lewis, 35 T.C. 71 (1960), and more recently Beatrice Levin, 47 T.C. 258 (1967) (Appeal pending).

29. Bradbury v. Commissioner of Internal Revenue, 1 Cir., 1962, 298 F.2d 111, 116–117.

30. Commissioner of Internal Revenue v. Berenbaum, 10 Cir., 1966, 369 F.2d 337, 340.

31. This is one of the factors for consideration in applying the so-called "net effect" test. Relevant factors are listed in United States v. Fewell, 5 Cir., 1958, 255 F.2d 496, 500–501, and repeated in Cobb v. Callan Court Co., 5 Cir., 1960, 274 F.2d 532, 537.

32. Taxpayer in its motion to reopen sought to introduce evidence showing the distribution was not substantially pro rata among the stockholders. See 2 Rabkin & Johnson, Federal Income, Gift & Estate Taxation, § 24102A, at 2425 (1966); Commissioner of Internal Revenue v. Sullivan, 5 Cir., 1954, 210 F.2d 607, 611 (Rives, J., dissenting). Whether this evidence would aid Taxpayer in view of the high percentage of its stock holdings in the corporations seems questionable. See Bradbury v. Commissioner of Internal Revenue, 1 Cir., 1962, 298 F.2d 111, 117.