[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15130

_____

Agency No. 17227-08

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 22, 2011
JOHN LEY
CLERK

DEANNA LANGILLE,
f.k.a. Deanna Birdsong,

                                        Petitioner-Appellant,

versus

COMMISSIONER OF IRS,

                                        Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court

_____

(November 22, 2011)

Before EDMONDSON and ANDERSON, Circuit Judges, and LAWSON,* District
Judge

PER CURIAM:

_____
*Honorable Hugh Lawson, United States District Judge for the Middle District of Georgia, sitting
by designation.

Deanna Langille, proceeding pro se, appeals the Tax Court's final decision in favor of the Commissioner of the Internal Revenue Service ("Commissioner" of the "IRS") on her petition for redetermination of deficiency for 1993, 1994, and 1995 and its denial of her various post-trial motions. On appeal, she argues that the Tax Court failed to deduct business expenses for her law practice and losses from her residential rental activity. Langille also argues that her underpayment of taxes was not due to fraud, as the Tax Court found. In her post-trial motions, including a motion to reconsider, two motions for new trial, and two motions to vacate, she contended that she suffered from serious iron anemia beginning in 1994 or 1995, and was not well enough to try her case at the time of her tax hearing in 2009.

During her tax trial, a potential buyer of her law practice testified that Langille told him that she maintained two sets of books: one that was a "wash" and the other that contained the "real receipts," which she did not disclose to the IRS. An IRS agent testified that during the execution of a search warrant at Langille's law office, he found records of a bank account that she did not disclose to the IRS in plastic trash bags, which he later discovered contained unreported legal income. A tax examiner testified as to how she determined Langille's tax liability using the bank deposit method.

We review the Tax Court's factual findings for clear error and its legal conclusions de novo. Estate of Whitt v. Comm'r of Internal Revenue, 751 F.2d 1548, 1556 (11th Cir. 1985). We construe briefs filed by pro se litigants liberally. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

The Sixteenth Amendment to the U.S. Constitution provides that "Congress shall have power to lay and collect taxes on incomes, from whatever source derived." U.S. CONST. Amend XVI. The Internal Revenue Code ("I.R.C.") imposes a tax on taxable income of every individual who is a citizen or resident of the United States, and estates and trusts, with some exceptions not applicable here. 26 U.S.C. § 1(a)-(e); 26 C.F.R. § 1.1-1(a). An income earner who fails to do so is subject to civil penalties if she does not file a proper income tax return and pay any taxes she owes. See, e.g., 26 U.S.C. § 6651(a) (imposing monetary penalties for failing to file a tax return or pay taxes); 26 U.S.C. § 6654 (same if a taxpayer underpays taxes).

## I. TAX DEFICIENCIES

Langille argues that the tax examiner did not credit many of her business expenses and instead treated them as personal expenses. She also contends that the examiner duplicated her income where Langille transferred money into a different account.

3

The Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving by a preponderance of the evidence that it is incorrect. Estate of Whitt, 751 F.2d at 1556. Pursuant to I.R.C. § 7491, the burden of proof as to factual matters may shift from the taxpayer to the Commissioner, but only if the taxpayer introduces credible evidence regarding a factual matter affecting her liability and only if she has maintained all required records and cooperated with reasonable requests from the Commissioner, such as providing information and documents. I.R.C. § 7491(a), 26 U.S.C. § 7491(a).

Section 6001 of the I.R.C. requires taxpayers to keep and maintain financial records sufficient to permit verification of income and expenses. I.R.C. § 6001, 26 U.S.C. § 6001. If such records are lacking, the Commissioner may reconstruct the taxpayer's income by any reasonable indirect method. Holland v. United States, 348 U.S. 121, 130-32, 75 S.Ct. 127, 132-34, 99 L.Ed. 150 (1954); 26 U.S.C. § 446(b). One such method of reconstructing a taxpayer's income indirectly is through the bank deposits method. Reaves v. Comm'r of Internal Revenue, 295 F.2d 336, 337-38 (5th Cir. 1961); Nicholas v. Comm'r of Internal Revenue, 70 T.C. 1057, 1064 (1978). Indeed, the tax court has held that a taxpayer's bank deposits provide prima facie evidence of income, and the taxpayer has the burden of proving that the bank deposits are not taxable income. Tokarski v. Comm'r of Internal

4

Revenue, 87 T.C. 74, 77 (1986).

A taxpayer may deduct expenses that are ordinary and necessary in carrying on a trade or business, but may not deduct personal, living, or family expenses. 26 U.S.C. § 262(a). To be deductible, an item must: "(1) be paid or incurred during the taxable year, (2) be for carrying on any trade or business, (3) be an expense, (4) be a necessary expense, and (5) be an ordinary expense." Comm'r of Internal Revenue v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352, 91 S.Ct. 1893, 1898, 29 L.Ed.2d 519 (1971) (quotations omitted). Taxpayers bear the burden of submitting evidence that supports their claims of entitlement to a deduction and the amount of that entitlement. Gatlin v. Comm'r of Internal Revenue, 754 F.2d 921, 923 (11th Cir. 1985).

Langille did not meet her burden to plead facts and issues with specificity and did not substantiate her business deductions for the amount she claimed in 1993, 1994, and 1995, in order to overcome the presumption that the Commissioner had correctly determined the tax deficiencies using the bank deposit method. In both the Tax Court and on appeal, Langille made only generalized assertions and failed to cite any record evidence to support same. Therefore, the tax court did not clearly err in entering a decision in favor of the Commissioner.

5

## II.  LOSSES FROM RENTAL ACTIVITY

Langille argues that her losses from her rental income should have been deducted from her net income from her law practice, instead of being treated as passive activity.  Specifically, she submits that her rental business was in fact "an active business" and her law practice and rental business were "one single activity," thus meeting the requirements for the exception to the passive activity rule.

Determining whether Langille's rental activities were a passive activity involves a legal conclusion or the application of facts to law that we review de novo.  Estate of Whitt, 751 F.2d at 1556.

Section 469 of the I.R.C. generally prohibits the deduction of passive activity losses from unrelated income, thus permitting passive losses to offset only passive income.  Schwalbach v. Comm'r of Internal Revenue, 111 T.C. 215, 223 (1998).  Passive income does not include gross income from interest, gain on the disposition of property, and earned income.  Id.; I.R.C. § 469(e); 26 U.S.C. § 469(e).  A passive activity is one which involves the conduct of any trade or business in which the taxpayer does not materially participate.  I.R.C. § 469(c)(1); 26 U.S.C.  § 469(c)(1).  Rental activity is treated as per se passive activity regardless of whether the taxpayer materially participates.  Id. at § 469(c)(2), (4).

Congress carved out an exception for rental activities of real estate professionals, effective for tax years beginning after December 31, 1993.  See Estate of Quick v. Comm'r of Internal Revenue, 110 T.C. 172, 184 (1998); Omnibus Budget Reconciliation Act of 1993, Pub.L. 103-66, § 13143, 107 Stat. 440 (1993).  The exception applies if (1) more than half of the taxpayer's personal services performed in trades or businesses during the year are performed in "real property trades or businesses" in which she materially participates, and (2) she performs more than 750 hours of services in such "real property trades or businesses."  I.R.C. § 469(c)(7)(B); 26 U.S.C. § 469(c)(7)(B).

Langille's residential rental activities do not qualify for the exception to the passive rule.  First, she has not asserted that she has met the requirement that she worked more than 50% of her hours on real estate rental activities, rather than on legal matters.  See id. § 469(c)(7)(B)(i).  Further, she has not demonstrated that she personally satisfied the 750-hour requirement under § 469(c)(7)(B).  *See id.* § 469(c)(7)(B)(ii).  Accordingly, the tax court properly determined that her residential rental real estate activities were passive activities for the years in question.[1]

---

[1]    We also reject Langille's argument that her rental activities and her legal practice were "one single activity" such that her personal services in the practice of law could count toward satisfying the "more than 50%" requirement and the 750-hour requirement.

## III.  FRAUD

Langille argues that her failure to complete and file detailed schedules with her tax returns in 1993, 1994, and 1995 was due to her poor physical and mental state and she provides various explanations for her accounting practices.

Because determining the existence of fraud is a question of fact, Petzoldt v. Comm'r of Internal Revenue, 92 T.C. 661, 699 (1989), we review whether Langille's underpayment of taxes was due to fraud for clear error, Estate of Whitt, 751 F.2d at 1556.

The Commissioner has the burden of proving fraud by clear and convincing evidence.  I.R.C. § 454(a), 26 U.S.C. § 7454(a); Tax Court Rule 142(b).  The tax court has explained that the Commissioner must prove that the taxpayer underpaid

---

Section 469(c)(7)(C) forecloses this argument: that section's definition of "real property trades or businesses" is explicit and does not include the practice of law.

We also reject Langille's argument that the Tax Court erred in failing to allow the personal service time of Langille's employees to count against the 750-hour requirement. Section 469(c)(7)(B)(ii) requires that "taxpayer" – not taxpayer's employees – perform more than 750 hours in "real estate trades or businesses."  Moreover, Langille has failed to point to record evidence supporting time that either she or her employees spent in "real estate trades or businesses."

To the extent that Langille argues that she should have benefitted from I.R.C. § 469(i)'s offset of $25,000, she fails to note that under § 469(i)(3), that amount is gradually phased out when the taxpayer's adjusted gross income exceeds $100,000.  The record show that the IRS in fact gave Langille a credit for real estate expenses for both 1993 and 1995.  The amount credited was reduced in accordance with the phase-out formula contained in § 469(i)(3) because Langille's adjusted gross income exceeded $100,000 for the relevant years.

her taxes in each year at issue and that she intended to evade taxes "by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." Parks v. Comm'r of Internal Revenue, 94 T.C. 654, 660-61 (1990).

Section 6663 of the I.R.C. imposes an additional amount added to the tax where "any part of any underpayment of tax required to be shown on a return is due to fraud." I.R.C. § 6663(a), 26 U.S.C. § 6663(a). If the Commissioner establishes that any portion of the underpayment is attributable to fraud, then the entire underpayment is treated as attributable to fraud, except as to the amount the taxpayer establishes by a preponderance of evidence is not attributable to fraud. Id. § 6663(b).

According to the tax court, fraud is an actual wrongdoing committed with the intent "to evade a tax believed to be owing." Marshall v. Comm'r of Internal Revenue, 85 T.C. 267, 272 (1985). Fraud is never presumed, and the Commissioner must produce "some independent evidence of fraudulent intent" to establish fraud. Petzoldt, 92 T.C. at 699. Whether fraud exists is a question of fact, and before finding fraud a court must consider the entire record and the taxpayer's entire course of conduct. Id.

A nonexclusive list of factors that demonstrate fraudulent intent includes: (1) understating income, (2) maintaining inadequate records, (3)

9

failing to file tax returns, (4) giving implausible or inconsistent explanations of behavior, (5) concealing assets, (6) failing to cooperate with tax authorities, (7) engaging in illegal activities, (8) attempting to conceal illegal activities, (9) dealing in cash and (10) failing to make estimated tax payments.

Recklitis v. Comm'r of Internal Revenue, 91 T.C. 874, 910 (1988) (citing Bradford v. Comm'r of Internal Revenue, 796 F.2d 303, 307-08 (9th Cir. 1986)).

The Commissioner has proved by clear and convincing evidence that Langille intentionally omitted income in her tax returns and has shown that at least some of Langille's underpayment in each of the years at issue was due to fraud. Langille has not demonstrated by a preponderance of the evidence that part of the underpayment is not due to fraud, and thus, the entire underpayment for each year was properly treated as due to fraud. See I.R.C. § 6663(b), 26 U.S.C. § 6663(b). Accordingly, the Tax Court did not clearly err in finding that Langille's underpayment was due to fraud.

## IV. POST-TRIAL MOTIONS

Langille argues that the Tax Court erred in denying her various post-trial motions and failing to grant her a new hearing because she was too ill to prepare for her 2009 tax hearing.

We review the tax court's denial of a motion for reconsideration for abuse of discretion. Byrd's Estate, 388 F.2d at 234 (5th Cir. 1967). Tax Court Rule 162

10

governs motions to vacate, but does not specify when the tax court should grant such a motion. Tax Court Rule 162. Therefore, the tax court may look to Fed.R.Civ.P. 60, as an analogous situation, for guidance on whether to grant motions to vacate. See Tax Court Rule 1(b) (noting "[w]here in any instance there is no applicable rule of procedure, the Court . . . may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand"). We review a district court's denial of a motion to vacate under Fed.R.Civ.P. 60(b) for abuse of discretion. AIG Baker Sterling Heights, LLC v. American Multi-Cinema, 579 F.3d 1268, 1270 (11th Cir. 2009).

Under Fed.R.Civ.P. 60(b), a district court may modify a judgment for any of the following reasons:

(1)    mistake, inadvertence, surprise, or excusable neglect;
(2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct of an opposing party;
(4)    the judgment is void;
(5)    the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6)    any other reason justifying relief.

Fed.R.Civ.P. 60(b). Clause six, the catch-all provision that allows relief from a

11

judgment or order for "any other reason justifying relief," appears to be the only clause that could apply to Langille's situation. However, relief under this provision is an "extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984).

We readily conclude that the Tax Court did not abuse its discretion in denying Langille's post-trial motions. Langille never asserted any incapacity because of health problems at or before trial; to the contrary, she announced she was "good" at the beginning of trial. The Tax Court explicitly noted that it observed no incapacity, no lack of lucidity, or any difficulty communicating, or any health problems. Finally, even if Langille's belated, post-trial evidence were considered (which it should not be), it fails to support any incapacity at trial. As the Tax Court pointed out, the only evidence related to medical treatment received by Langille more than a month before trial, and Langille provided no affidavit of any treating physician indicating the duration or severity or timing of any impairment.

## V. CONCLUSION

Upon review of the record and consideration of the parties' briefs, we affirm the Tax Court's decision and its denial of Langille's various motions.

12

AFFIRMED.[2]

---

[2]     Langille's motion to waive oral argument and submit the case on the briefs and her "Open letter to Appellate court" is GRANTED. Accordingly, the case is removed from the oral argument calendar. Langille's "Motion to File Newly Discovered Information" is DENIED.