T.C. Memo. 2014-95

UNITED STATES TAX COURT

ALEXANDER HERWIG AND JENNIFER K. HERWIG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17682-11.                    Filed May 20, 2014.

<u>Thomas F. Hudgins</u>, for petitioners.

<u>Anne M. Craig</u> and <u>Jeremy D. Cameron</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUY, <u>Special Trial Judge</u>:  Respondent determined that petitioners are

liable for Federal income tax deficiencies and accuracy-related penalties for the

taxable years 2007, 2008, and 2009 (years in issue) as follows:

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|---------------------|
| 2007 | $26,795 | $5,359 |
| 2008 | 18,969 | 3,794 |
| 2009 | 30,362 | 6,072 |

Petitioners, husband and wife, filed a timely petition for redetermination with the Court pursuant to section 6213(a).[1]  At the time the petition was filed, petitioners resided in Florida.[2]

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[2]When the petition was filed, the Court inadvertently added the letter "S" to the docket number designating this case as a small tax case despite petitioners' request in the petition that the case not be processed under the Rules governing small tax cases.  See Rules 170-174.  Upon discovering the error after trial, the Court held a conference call with the parties, confirmed that petitioners did not intend to elect small tax case status, and issued an order striking the letter "S" from the docket number.

**[\*3]** After concessions,[3] the issues for decision are whether petitioners:

(1) disposed of their interests in a passive activity during 2008 or 2010, thereby

allowing them to deduct what otherwise are suspended passive losses arising

during the years in issue, and (2) are liable for accuracy-related penalties for the

years in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of

facts, the supplemental stipulation of facts, and the accompanying exhibits are

incorporated herein by this reference.

---

[3]Petitioners concede that respondent correctly disallowed $34,121, $17,099, and $12,964 of the losses they reported on Schedules E, Supplemental Income and Loss, for 2007, 2008, and 2009, respectively. Respondent acknowledges that petitioners may carry these passive losses forward to taxable year 2010. Petitioners further concede that they are not entitled to the following deductions: (1) other losses of $893,394 reported on Form 4797, Sales of Business Property, for 2008; (2) net losses of $15,830, $18,140, and $1,981 reported on Schedules C, Profit or Loss From Business, for 2007, 2008, and 2009, respectively; (3) real estate taxes of $36,564 and interest of $20,485, reported on Schedules A, Itemized Deductions, for 2007 and 2008, respectively; and (4) a loss of $768,208 identified as "Other Write in Income" for 2009. The parties agree that (1) respondent properly determined that a deduction for mortgage interest of $26,871 that petitioners reported on Schedule A for 2007 is disallowed and that same item is properly deductible on petitioners' Schedule E for 2007, and (2) petitioners are allowed deductions for taxes of $8,418 and $8,200 on Schedules E for 2007 and 2008, respectively.

**[*4]** I. Via Capri and Via Murano Properties

In March 2005 petitioners purchased a condominium unit at 2747 Via Capri, Clearwater, Florida (Via Capri property), for $603,085. In April 2005 petitioners purchased a second condominium unit (also in Clearwater) at 2729 Via Murano (Via Murano property) for $492,280. Petitioners obtained mortgage loans from Fifth Third Mortgage Co. (Fifth Third) to purchase the two properties. The Fifth Third loan documents are not part of the record.

II. AJH Resources, LLC

Petitioners each held a 49.5% interest in AJH Resources, LLC (AJH), from 2005 through at least 2010. Zander Solutions, Inc., held a 1% interest in AJH.[4] During 2005 petitioners transferred ownership of the Via Capri and Via Murano properties to AJH, which in turn acted as landlord and leased the two properties from 2005 to 2008.

III. Foreclosure Action

In 2008 Fifth Third filed a lawsuit against petitioners in the Circuit Court for the Sixth Judicial Circuit in Pinellas County, Florida, to foreclose the

---

[4]AJH is a limited liability company with at least two members. Because AJH did not elect to be treated as a corporation, it is treated as a partnership (a so-called passthrough entity) for Federal income tax purposes, and its profits and losses "pass through" the entity to the owners, called members. Sec. 301.7701-3(a) and (b)(1)(i), Proced. & Admin. Regs.

[*5] mortgages on the Via Capri and Via Murano properties and to recover deficiencies from them (foreclosure litigation). Petitioners filed a counterclaim against Fifth Third.[5]

The circuit court entered final judgments of foreclosure in favor of Fifth Third in respect of both properties, and Fifth Third subsequently was the successful bidder when the properties were sold at foreclosure sales on December 19, 2008. Fifth Third later filed a motion for entry of deficiency judgments against petitioners in respect of both properties. As discussed below, Fifth Third's motion for entry of deficiency judgments and petitioners' counterclaim remained unresolved until they agreed to settle the foreclosure litigation in 2011.

In the interim Fifth Third issued to Mr. Herwig Forms 1099-A, Acquisition or Abandonment of Secured Property, for 2008 reporting that (1) the balance due on the mortgage on the Via Capri property was $574,100 and the fair market value of the property was $100,000, and (2) the balance due on the mortgage on the Via Murano property was $471,100 and the fair market value of the property was $102,000.

---

[5]The record does not reflect the nature of petitioners' cause of action against Fifth Third.

[*6] IV. AJH's Tax Returns[6]

The record includes Forms 1065, U.S. Return of Partnership Income, that AJH filed for the taxable years 2008, 2009, and 2010.

AJH reported an ordinary business loss of $1,800 on its Form 1065 for 2008 and attached to that return (1) a Schedule D, Capital Gains and Losses, reporting a short-term capital loss of $7,216 and a long-term capital loss of $98,721,[7] (2) a Form 8825, Rental Real Estate Income and Expenses of a Partnership or an S Corporation, reporting a net rental real estate loss of $31,348 attributable to the Via Capri and Via Murano properties, and (3) a Schedule L, Balance Sheets per Books, reporting that it owned buildings and other depreciable assets with a value of $1,045,100 at the end of the year.[8] AJH issued Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., to petitioners indicating that they each contributed capital of $2,291 during 2008.

---

[6]The parties stipulated that from 2005 to 2008 AJH claimed deductions for depreciation on the Via Capri and Via Murano properties totaling $73,936 and $60,668, respectively.

[7]In addition to its rental real estate activity, AJH traded securities during the years in issue.

[8]Under the circumstances, we infer that this entry refers to the Via Capri and Via Murano properties. There is no corresponding entry on the Schedule L, however, for buildings and other depreciable assets owned at the beginning of 2008.

**[*7]**    AJH reported an ordinary business loss of $2,410 on its Form 1065 for 2009 and attached to that return (1) a Schedule D reporting a short-term capital loss of $6,540, and (2) a Schedule L reporting that it owned buildings and other depreciable assets with a value of $1,045,100 at the beginning of the year.[9]  AJH issued Schedules K-1 to petitioners indicating that they each contributed capital of $70,932 during 2009.

AJH filed a Form 1065 for 2010 and checked a box on the form indicating that it was a "Final return".  AJH reported that it had no receipts and no expenses during 2010.

V.  Petitioners' Tax Returns

Petitioners filed joint Forms 1040, U.S. Individual Income Tax Return, for the years in issue.  Petitioners attached Schedules E to their returns reporting in relevant part "nonpassive" losses of $97,851, $33,608, and $2,386 for 2007, 2008, and 2009, respectively, which they attributed to their interests in AJH.  Petitioners reported a loss of $893,394 on Form 4797 attached to their Form 1040 for 2008 in connection with the Via Capri and Via Murano property foreclosures.  Petitioners carried over $768,208 of the loss described above to their Form 1040 for 2009.

---

[9]There is no corresponding entry on the Schedule L for buildings and other depreciable assets owned at the end of 2009.

**[\*8]** VI.  Petitioners' Settlement With Fifth Third

In July 2011 petitioners executed a settlement agreement and release (settlement agreement) with Fifth Third which states that, in consideration of Fifth Third's agreement to waive any deficiency judgments arising against petitioners in respect of the Via Capri and Via Murano property foreclosures, petitioners agreed to dismiss with prejudice the counterclaim that they had filed against Fifth Third.

VII.  Notice of Deficiency

Respondent determined in relevant part that deductions that petitioners claimed for losses attributable to their interests in AJH were passive activity losses within the meaning of section 469.  Respondent further determined that, because petitioners did not show that they had disposed of their "entire interest" in AJH within the meaning of section 469(h), or that they had passive income during the years in issue, the suspended losses were carried forward to the taxable year 2010.

VIII.  Petition

Petitioners filed a timely petition for redetermination.  The petition alleges that petitioners were "materially participating real estate professional[s]" during the years in issue.  As mentioned above, petitioners subsequently conceded that respondent correctly determined that portions of the deductions that they claimed

[*9] for losses attributable to their interests in AJH were passive activity losses within the meaning of section 469.

IX.  Developments at Trial

Petitioners did not testify at trial, nor did they call any witnesses to testify. The transcript of the proceedings is limited to counsels' opening statements and oral argument and the admission of an exhibit offered into evidence by petitioners' counsel.

Petitioners' counsel began his presentation by informing the Court that petitioners had recently discovered that they had never "deeded" the Via Capri and Via Murano properties to AJH.  He then made an oral motion to rescind a statement in the parties' stipulation of facts (executed two days earlier) that petitioners had transferred the properties to AJH during 2005.  The Court denied petitioners' counsel's oral motion to rescind given that respondent would be unduly prejudiced if petitioners were permitted to raise that issue for the first time at trial.[10]

_____

[10]Petitioners did not raise any issue related to the transfer of the properties to AJH in their petition or in an amended pleading, nor did they file a pretrial memorandum raising the issue.  We do not consider an issue that has not been pleaded.  See, e.g., Frentz v. Commissioner, 44 T.C. 485, 491 (1965), aff'd, 375 F.2d 662 (6th Cir. 1967).  This is particularly true in a case like this where the issue cannot be considered without surprise and prejudice to the opposing party.

(continued...)

[*10] The exhibit admitted into evidence at trial was a copy of petitioners' July 2011 settlement agreement with Fifth Third. In the light of the settlement agreement, the parties agreed that petitioners had cancellation of indebtedness (COD) income in 2011 in connection with the Via Capri and Via Murano property foreclosures (as opposed to 2008 as stated in the parties' stipulation of facts).

Petitioners' counsel went on to state that, insofar as AJH had filed a Form 1065 for 2010, clearly marked "Final return", it was petitioners' position that they should be deemed to have disposed of their entire interests in the passive activity within the meaning of section 469(g) during 2010.

OPINION

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners do not contend that the burden of proof shifts to respondent under section 7491(a). In any event, because we decide the question whether petitioners disposed of their entire interests in the underlying passive activity on the preponderance of the evidence, the allocation of the burden of

---

10(...continued)
See Estate of Mandels v. Commissioner, 64 T.C. 61, 73 (1975).

[*11] proof as to that issue is immaterial.  See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  Sec. 6001; see Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1976), aff'd, 540 F.2d 821 (5th Cir. 1976).

I.  Passive Activity Losses

Taxpayers are allowed deductions for certain business and investment expenses under sections 162 and 212.  Section 469(a), however, generally disallows passive activity losses and credits.  A passive activity loss is defined as the excess of the aggregate losses from all passive activities for a taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1). With exceptions not relevant here, rental activities are passive activities.  Sec. 469(c)(2).

[*12] In accordance with section 469(b), a passive activity loss disallowed under section 469 for any taxable year is carried forward and treated as a deduction allocable to such activity in the next taxable year. If it turns out that the activity results in additional passive activity losses in the carryover year (and in the absence of passive income from some other activity), the suspended passive losses are carried forward to the succeeding taxable year by application of section 469(b). See Langille v. Commissioner, T.C. Memo. 2010-49, aff'd, 447 Fed. Appx. 130 (11th Cir. 2011). Suspended passive losses may be carried forward indefinitely by this process until they are used. Id.

Section 469(g) provides that passive losses that have been suspended as described above are generally allowed when the taxpayer "disposes of his entire interest in any passive activity". See Bilthouse v. United States, 553 F.3d 513, 515 (7th Cir. 2009). More specifically, section 469(g)(1) provides that, if a taxpayer disposes of his entire interest in a passive activity in a transaction with an unrelated party where all of the gain or loss realized on the disposition of the interest is recognized, the excess of any loss from such activity for the taxable year (including suspended passive losses from an earlier taxable year), over any net income or gain for such taxable year from all other passive activities (determined after the application of subsection (b)), shall be treated as a loss which is not from

**[\*13]** a passive activity.  See <u>Lowe v. Commissioner</u>, T.C. Memo. 2008-298.  The excess loss, if any, normally offsets the taxpayer's income for the loss year, and any remaining losses are carried back to the two preceding years and then carried forward to the 20 years following the loss year in accordance with the provisions of section 172.

In the case of an S corporation, a partnership, or a grantor trust, the rules prescribed in section 469(g) likewise apply when the entity disposes of its entire interest in a passive activity.  <u>See</u> S. Rept. No. 99-313, at 725 (1986), 1986-3 C.B. (Vol. 3) 1, 725-726.  If the entity carries on more than one activity, the entity's sale or exchange of all assets of a passive activity is sufficient to invoke the provisions of section 469(g), even if other assets are retained.  <u>Id.</u>[11]

---

[11]In this regard, sec. 1.469-4(g), Income Tax Regs., provides as follows:

(g) Treatment of partial dispositions.--A taxpayer may, for the taxable year in which there is a disposition of substantially all of an activity, treat the part disposed of as a separate activity, but only if the taxpayer can establish with reasonable certainty--

(1) The amount of deductions and credits allocable to that part of the activity for the taxable year under § 1.469-1(f)(4) (relating to carryover of disallowed deductions and credits); and

(2) The amount of gross income and of any other deductions and credits allocable to that part of the activity for the taxable year.

**[*14]** Section 469(g) does not define or describe what constitutes a fully taxable disposition, and there are no regulations elaborating on the principle. One commentator has observed: "Section 469 is meant to curb artificial tax losses, not on the ultimate deductibility of economic losses. When an investment in a passive activity is sold and the cumulative result of the investment (including gain or loss on sale) is a loss, the loss is an economic loss, not an artificial tax loss, and ought to be allowed." Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, para. 28.10.1, at 28-95 to 28-96 (3d ed. 1999).

Petitioners no longer dispute that the losses they claimed in connection with AJH's rental real estate activities were passive losses within the meaning of section 469. Petitioners contend, however, that they disposed of their entire interests in the passive activity when Fifth Third foreclosed on the properties in December 2008 or, in the alternative, when AJH filed its "Final return" in 2010.[12]

---

[12]Although the notice of deficiency upon which this case is based does not concern the taxable year 2010, sec. 6214(b) provides in relevant part that, in redetermining a deficiency for any taxable year, the Court shall consider such facts with relation to the taxes for other years as may be necessary correctly to redetermine the amount of such deficiency. Consistent with sec. 6214(b), the Court has jurisdiction to consider petitioners' claim that they may carry back suspended passive losses from the taxable year 2010 to the taxable years in issue (i.e., 2008 and 2009). See Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 274-276 (1990).

[*15] We are not convinced, on this record, that petitioners satisfied the requirements of section 469(g) when Fifth Third foreclosed on the Via Capri and Via Murano properties in December 2008. As previously mentioned, section 469(g) contemplates that the taxpayer must dispose of his or her entire interest in a passive activity in a transaction with an unrelated party under which all gain or loss realized on such disposition is recognized.

Section 1001 sets forth the rules governing the computation of gain or loss realized from the sale or other disposition of property. A foreclosure sale normally constitutes a disposition of property for purposes of section 1001(a). See Helvering v. Hammel, 311 U.S. 504 (1941); Ryan v. Commissioner, T.C. Memo. 1988-12, aff'd sub nom. Lamm v. Commissioner, 873 F.2d 194 (8th Cir. 1989). "A foreclosure action that is being appealed [, however,] is not 'final' in the normal sense of that word." See Great Plains Gasification Assocs. v. Commissioner, T.C. Memo. 2006-276 (quoting Ryan v. Commissioner, T.C. Memo. 1998-12).

Although Fifth Third foreclosed on the properties in December 2008, we note that AJH continued to list the properties as assets on Schedules L attached to its Forms 1065 for 2008 and 2009. Petitioners offered no explanation why this was the case if in fact the foreclosure sales were final in 2008. Moreover, Fifth

[*16] Third's motion for entry of deficiency judgments against petitioners and petitioners' counterclaim against Fifth Third were pending in the foreclosure litigation until both matters were settled in July 2011. The parties agreed at trial that, in the light of the Fifth Third settlement agreement, petitioners realized COD income in 2011 (as opposed to 2008 as they initially assumed). Considering the uncertainties inherent in the ongoing litigation, we conclude that the cumulative economic effect of petitioners' investment in the passive activity--a final accounting of the gain or loss realized on the disposition of the passive activity and recognition of any gain or loss for tax purposes--could not be determined in 2008. Consequently, petitioners did not dispose of their entire interests in the passive activity within the meaning of section 469(g) as a result of the Fifth Third foreclosure actions in December 2008, and their suspended passive losses were not eligible to be treated as nonpassive losses for that year.

We likewise agree with respondent that the tax return that AJH filed for 2010, marked "Final return", does not demonstrate that petitioners disposed of their entire interests in AJH within the meaning of section 469(g). Contrary to petitioners' position, a tax return alone is not proof of the statements contained therein; a tax return merely sets forth the taxpayer's claim. See Roberts v. Commissioner, 62 T.C. 834, 837 (1974); Seaboard Commercial Corp. v.

[*17] <u>Commissioner</u>, 28 T.C. 1034, 1051 (1957).  Petitioners offered no testimony themselves, and they did not call any witnesses to address the accuracy of AJH's Form 1065 for 2010.  In the absence of any objective evidence that AJH wound up its business and was no longer engaged in passive activities during 2010, we are unable to conclude that petitioners disposed of their entire interests in the passive activity in question within the meaning of section 469(g).

## II.  Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the amount of any underpayment attributable to negligence or disregard of rules or regulations.  The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c).  Negligence also includes any failure to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.; <u>see</u> <u>Olive v. Commissioner</u>, 139 T.C. 19, 43 (2012).

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment.  Sec. 1.6664-4(a), Income Tax Regs.  The determination of whether the taxpayer acted with

**[*18]** reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Higbee v. Commissioner, 116 T.C. 438, 447 (2001); see Rule 142(a); Welch v. Helvering, 290 U.S. at 115. Respondent has discharged his burden of production under section 7491(c) inasmuch as petitioners have conceded that they were not entitled to numerous deductions for each of the years in issue. See sec. 1.6662-3(b)(1), Income Tax Regs.

Petitioners did not testify at trial, and they did not offer any other evidence in support of the proposition that they had reasonable cause for, and they acted in good faith with respect to, the underpayments for the years in issue. See sec. 1.6664-4(a), Income Tax Regs. Consequently, we sustain respondent's

**[\*19]** determination that petitioners are liable for accuracy-related penalties under section 6662(a) and (b)(1) for the years in issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.